No. 96-2159

United States of America,       *

                           *

       Plaintiff-Appellee,   *  Appeal from the United States

                           *  District Court for the

   v.                   *  District of Minnesota.

                           *

Herman L. Abrams,        *

                           *

       Defendant-Appellant.  *

Submitted:  November 21, 1996

Filed: March 18, 1997

Before FAGG, HEANEY, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Herman L. Abrams appeals his conviction on one count of bank robbery in violation of 18 U.S.C. § 2113(a) (1994). He contends that the district court[1] committed plain error by allowing the government to elicit prejudicial testimony that the district court had preliminarily determined should be excluded. We affirm.

**I.**

At approximately 4:43 p.m. on November 21, 1994, the First Bank, located at 1071 Grand Avenue in St. Paul, Minnesota, was robbed as the tellers were preparing to close for the evening. Viewing the evidence in the light most favorable to the verdict,

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

two bank tellers were counting and bundling their money as the robber, later identified as Herman Abrams, entered through the back door. He waited in line at one teller window, requested a deposit slip, and went to a nearby table where he wrote a demand note on the deposit slip. The robber returned to the line in front of the first teller, who was still counting the money from her drawer. A bank teller supervisor summoned Abrams to her window as she was returning a bundle of money to her drawer. Abrams demanded that she give him the bundle of money and handed her the note that said, "I have a gun. Give me the money." (Trial Tr. at 31.) The supervising teller complied, and the robber fled with a bundle containing $5,500. Both tellers had a good opportunity to view the robber's face at a close distance, and they independently filled out a form detailing the bank robber's description without having discussed the matter with each other. Each identified Abrams at trial.

The bank's surveillance camera captured pictures of the robber, an African-American male whom the supervising teller described as wearing a dark colored baseball cap with an "M" on the front, a navy blue jacket, and dark pants. Shortly after the robbery, an officer was carrying one of these pictures when he stopped to visit Ms. Donesther Morris. She noticed the picture in the officer's hand and said she knew the person in the picture to be Herman Abrams, whom she knew from high school. Earlier that day, between 3:15 and 3:30 p.m., Ms. Morris had seen Herman Abrams in a nearby car wearing the clothes depicted in the surveillance picture. They exchanged waves as they waited at a stoplight.

Ms. Tina Entner was Abrams' girlfriend at the time of the robbery and testified that Abrams had confessed the robbery to her in late November, 1994. Ms. Entner testified that Abrams told her he had parked his car three blocks away in an alley, and after robbing the bank, he fled to his mother's house in St. Paul. At approximately 6:40 that evening Abrams gave Ms. Entner $300 from a

2

wad of money to help pay household bills. Additionally, on December 1, 1994, she was with Abrams when he retrieved a Minnesota Twins baseball hat, a blue jacket, and a pair of brown jeans from his mother's home and disposed of them at a garbage hauling company.

The government also showed that between noon and 3:00 p.m. on the day of the robbery, Abrams had visited his insurance agent to obtain an estimate of the cost to reinstate his car insurance. The estimate was $310. Abrams told the agent he did not have the money but would have it by Friday. Abrams did not purchase the insurance at that time but returned at approximately 6:00 p.m. (after the robbery) and purchased the insurance with two money orders purchased shortly before 6:00 p.m.

A few days after the robbery, a deputy in northern Minnesota stopped Abrams for speeding. Abrams was acting nervous and kept his hands down behind his waist. The officer noticed a stack of money to the right of Abrams on the driver's seat and on the floor. The bills totalled $1,594.

On May 25, 1995, Abrams was indicted on one count of bank robbery, in violation of 18 U.S.C. § 2113(a). Prior to trial, the district court ruled that the government could not admit at trial any details concerning any domestic violence perpetrated by Abrams against Ms. Entner. The defense sought to impeach the testimony of Tina Entner with a prior inconsistent statement. She had originally told the FBI that Abrams was not the robber, but changed her story in April 1995 after their relationship had ended. On redirect examination, the Assistant United States Attorney (AUSA) attempted to rehabilitate her witness, Ms. Entner. In answer to questions posed by the AUSA, Ms. Entner testified that she initially lied to the FBI because she feared for her life. She further testified that she and Abrams had a bad relationship and that he had previously pulled guns and knives on her, choked her,

threatened her, and chased her on the freeway. Defense counsel made no objection to this testimony.

Abrams presented an alibi defense through his sister, Dana Abrams, who testified that Abrams had been shopping with her at the time of the robbery. She also testified that she had loaned Abrams $1,000 a few days before the robbery at issue.

The jury convicted Abrams. After granting a joint motion for a downward departure, the district court sentenced Abrams to a term of 121 months of imprisonment. Abrams appeals his conviction, raising one issue -- the redirect testimony of Ms. Entner.

## II.

Abrams contends that the district court committed plain error by admitting the testimony of Tina Entner, detailing Abrams' prior acts of domestic abuse. As indicated, the district court had made a preliminary pre-trial ruling prohibiting the government from offering any details of the domestic violence Abrams allegedly engaged in during his relationship with Ms. Entner. The district court ruled that, if the defense impeached Ms. Entner with her first statement, the government could attempt to explain the inconsistency but could not inquire into the details of the abuse or whether any charges of domestic assault were filed against Abrams. Ms. Entner was expected to explain her inconsistent prior statement by stating that she feared the defendant because he had abused her during their relationship but that after the relationship had ended, she moved 300 miles away and then felt free to talk to the FBI.

At trial, after the defense impeached Ms. Entner with her prior inconsistent statement, the AUSA attempted to rehabilitate the witness, and the following exchange occurred:

4

Q. Why were you lying when you talked to the FBI agents the first time?

A. The first time, in fear of my life.

Q. Tell me why you feared for your life?

A. Herman and I had a very bad relationship. There was a lot of abuse. It was a very -- there was a lot of domestic abuse in our relationship. A lot of threats were made to me. Mr. Abrams has pulled guns. He's pulled knives.

Q. I'm sorry. I didn't hear you.

A. He's pulled guns on me. He's pulled knives on me. He's choked me. He's chased me down the freeways.

Q. Okay. Did you fear for your life?

A. Yes.

(Trial Tr. at 110.) The defense lodged no objection to this testimony at the time of trial, and Abrams now argues that the admission of this evidence deprived him of a fair trial.

Because Abrams failed to object to this evidence at trial, we review for plain error. Fed. R. Crim. P. 52(b). Our authority under Rule 52(b) is limited to determining if there is "an `error' that is `plain' and that `affect[s] substantial rights.'" United States v. Olano, 507 U.S. 725, 732 (1993) (quoting Rule 52(b)). "When a forfeited error meets these limitations, we have discretionary authority to order correction," United States v. Montanye, 996 F.2d 190, 192 (8th Cir. 1993) (en banc), but we "should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 732 (internal quotations and alterations omitted).

There is no dispute that the district court properly allowed Ms. Entner to testify to her fear of Abrams as a means of

5

explaining the reason for her prior inconsistent statement.  See <u>Wycoff v. Nix</u>, 869 F.2d 1111, 1116 (8th Cir.) (government allowed to ask general questions about threats in attempt to explain reason for prior inconsistent statement), <u>cert.</u> <u>denied</u>, 493 U.S. 863 (1989).  However, that portion of Ms. Entner's testimony detailing that Abrams pulled guns and knives on her, choked her, and chased her, is exactly the type of testimony that the district court sought to exclude by its preliminary ruling.  Abrams contends that the district court erred by failing to give a limiting instruction sua sponte after this testimony was erroneously admitted into evidence and by failing to grant a mistrial due to prosecutorial misconduct in eliciting this testimony.

The district court did not err by failing to give a limiting instruction sua sponte in this case.  See <u>United States v. Perkins</u>, 94 F.3d 429, 435-36 (8th Cir. 1996) (stating "we have never found it to be plain error when a court does not give a limiting instruction of any kind <u>sua sponte</u> with respect to Rule 404(b) type evidence"), <u>cert.</u> <u>denied</u>, 1997 WL 10420 (U.S. Feb. 18, 1997) (No. 96-7365); <u>United States v. McGuire</u>, 45 F.3d 1177, 1188 (8th Cir.) (stating court need not issue prior crimes limiting instruction sua sponte), <u>cert.</u> <u>denied</u>, 115 S. Ct. 2558 (1995). Furthermore, while this testimony was excluded by the court's preliminary ruling, it was not so prejudicial as to affect Abrams' substantial rights. See <u>Olano</u>, 507 U.S. at 732.  The jury was properly informed that Ms. Entner initially lied because she feared for her life.  While her testimony referring to guns, knives, chasing, and choking violated the district court's preliminary ruling, we conclude that this reference (in the context of explaining her inconsistent statement and fear of Abrams) had little overall prejudicial effect because the properly admitted evidence of guilt was strong.  The government presented considerable evidence against Abrams. The government's case was not solely dependent on Ms. Entner's testimony but included the eye witness identifications of two bank tellers, photographs of the robbery from security cameras, Ms.

6

Morris's testimony that the man in the surveillance photo was Abrams, whom she had seen earlier in the day dressed as shown in the surveillance camera pictures, and the evidence that Abrams possessed large amounts of cash close in time to the robbery. Moreover, the district court allowed Abrams to extensively cross examine and impeach Ms. Entner's testimony. The admission of her prejudicial statements did not deprive Abrams of a fair trial and did not seriously affect the fairness or integrity of the judicial proceeding.

For the same reasons, the district court did not err by not sua sponte granting a mistrial on the basis of prosecutorial misconduct. Generally, when assessing allegations of prosecutorial misconduct, we consider whether the prosecutor's remarks were in fact improper and whether they prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. McGuire, 45 F.3d at 1189. First, assuming that the prosecutor intentionally elicited the prejudicial statements,[2] such conduct is improper. Turning to the second part of the test, we consider three factors to determine the prejudicial effect from the prosecutorial misconduct: (1) the cumulative effect of the misconduct, (2) the strength of the properly admitted evidence of guilt, and (3) the curative actions taken by the trial court. United States v. Jackson, 41 F.3d 1231, 1233 (8th Cir. 1994). As already discussed, the cumulative effect of the misconduct is minimal in light of the strength of the properly admitted evidence of guilt in this case, and the fact that the district court took no curative action sua sponte did not deprive Abrams of a fair trial.

---

[2]The government asserts that the witness's testimony was emotional and at times barely audible. The prosecutor states that she asked Ms. Entner to repeat the objectionable testimony because she did not hear Ms. Entner's response, not in an attempt to underscore the improper statement before the jury. Because the cold record does not communicate this type of information, we give the defendant the benefit of the doubt in our analysis.

7

**III.**

Accordingly, we conclude that the district court did not commit plain error, and we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.