# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3450

_____

United States of America,         *

                                 *

        Appellee,          *

                                 *     Appeal from the United States

        v.                   *     District Court for the

                                 *     District of Minnesota.

Flavio Diaz Santana,         *

                                 *

        Appellant.        *

_____

Submitted:  March 10, 1998

Filed:  July 24, 1998

_____

Before WOLLMAN and LOKEN, Circuit Judges, and BATAILLON,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

Flavio Diaz Santana appeals from the judgment entered by the district court[2] on his convictions for conspiracy to distribute and possess with intent to distribute cocaine

_____

[1]The HONORABLE JOSEPH F. BATAILLON, United States District Judge for the District of Nebraska, sitting by designation.

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

in violation of 21 U.S.C. § 846 and for aiding and abetting the possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).  We affirm.

## I.

In October of 1996, Bill Wyffels, a law enforcement officer with the Eden Prairie Police Department and a member of the Southwest Hennepin Drug Task Force, received information from a confidential informant that a man named Gerardo Arellano was selling cocaine in Shakopee, Minnesota.  After independently corroborating certain aspects of the informant's report, Officer Wyffels and other members of the drug task force began surveillance of Arellano's residence.  On October 22, the informant, acting under the direction of the officers, set up a controlled buy in which he was to purchase one ounce of cocaine from Arellano.  Following the successful completion of this purchase, the officers obtained a search warrant for Arellano's apartment.  The officers did not immediately execute the warrant, however, and instead instructed the informant to set up another buy, this time for fifteen ounces of cocaine.  The informant contacted Arellano by telephone on October 30.  Arellano told the informant that he needed to contact his supplier in order to find out if he could obtain the drugs.  Arellano called back a short time later, telling the informant that his supplier was delivering the cocaine from Minneapolis and that they could meet in about twenty minutes.

The officers set up surveillance around Arellano's apartment.  After a short while, they observed an automobile approach and come to a stop.  The driver, later identified as Diaz, and a passenger, Timeteo Ruiz, exited the vehicle and accompanied Arellano, who had been waiting outside, into Arellano's apartment.  Arellano and the informant then met as scheduled at a local bar before returning to the apartment.  Once inside the apartment, Arellano showed the informant a large plastic sack containing numerous plastic bags filled with cocaine.  After inspecting the drugs, the informant left the apartment, explaining that he needed to retrieve the money from his vehicle.

The officers then executed the search warrant, discovering during the search a plastic sack, near which Diaz was standing, containing fifteen individual packages, each of which contained one ounce of cocaine. The officers also discovered 16 grams of cocaine in the pocket of a shirt hanging in Arellano's closet and 35.2 grams of cocaine in the trunk of Arellano's car. The search also resulted in the discovery of $3,449 in cash. Of this total, Diaz carried $2,059, Ruiz carried $360, and the remainder was found in the shirt in Arellano's closet. In addition, the officers discovered Arellano's phone number in Diaz's wallet. Lastly, fingerprint analysis of the seized cocaine packages revealed a solitary fingerprint belonging to Diaz.

A grand jury returned a three-count indictment against Arellano, Diaz, and Ruiz. Counts I and III charged each defendant with conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 and with aiding and abetting the possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Count II was returned against Arellano only, and charged him with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). After the indictment was returned, Ruiz apparently fled the area, and his whereabouts are unknown. Arellano agreed to plead guilty and cooperate with the government. Diaz rejected a similar plea bargain, choosing instead to proceed to trial.

Arellano testified that Diaz had been supplying him with cocaine for approximately three months, beginning in August of 1996. A typical delivery consisted of approximately two ounces of cocaine. Initially, Arellano received about two deliveries per week. The frequency of the deliveries steadily increased as Arellano began to develop a customer base. By October of 1996, Arellano was receiving two-ounce deliveries on a daily basis. Arellano also testified that on the day of his arrest he had contacted Diaz about obtaining fifteen grams of cocaine and that Diaz had subsequently delivered the cocaine found in the apartment.

Diaz testified on his own behalf, denying Arellano's allegations. He testified that he had driven Ruiz to Shakopee as a favor and had no knowledge about the nature of Ruiz's dealings with Arellano. He claimed not to have known that Ruiz and Arellano were involved in a cocaine transaction until shortly before the police arrived, at which time he decided to investigate the contents of the plastic sack. He claimed that he then picked up one of the individual bags, thereby explaining the presence of his fingerprint.

The jury returned a verdict finding Diaz guilty of both charged counts. The district court sentenced him to 78 months' imprisonment, the lowest possible sentence in the applicable range. Diaz now appeals.

## II.

Diaz first contends that his trial was marked by numerous defects, including prosecutorial misconduct and erroneously admitted expert testimony.

We begin with Diaz's allegations of prosecutorial misconduct. He contends that statements made and testimony elicited by the government constituted improper bolstering of or vouching for Arellano's credibility. Improper vouching may occur when the government: (1) refers to facts outside the record or implies that the veracity of a witness is supported by outside facts that are unavailable to the jury; (2) implies a guarantee of truthfulness; or (3) expresses a personal opinion about the credibility of a witness. See United States v. Beasley, 102 F.3d 1440, 1449 (8th Cir. 1996), cert. denied, 117 S. Ct. 1856 (1997).

Diaz points to two instances of improper vouching. First, the government asked Arellano to explain the terms of his plea agreement, to which Arellano simply replied, "Just to tell the truth." Second, the government stated in its closing argument that "the government doesn't want anyone convicted on anything less than the truth." Diaz argues that these instances reflect an attempt on behalf of the government to act as a

guarantor of truthfulness. We disagree. Our decisions establish that "[e]vidence of the existence, the terms, and the witness's understanding of a plea or witness immunity agreement is not vouching." Id. at 1450; see also United States v. Magee, 19 F.3d 417, 421 (8th Cir. 1994). With respect to the government's closing remarks, the prosecutor did not express a personal opinion regarding Arellano's credibility, did not make any guarantees of truthfulness, and did not imply that she knew something that the jury did not. See Beasley, 102 F.3d at 1449. We therefore conclude that there was no impermissible vouching in this case.

We have considered Diaz's other allegation of prosecutorial misconduct and conclude that it is without merit.

Diaz next contends that the district court abused its discretion in admitting the testimony of Captain Eldon Fontana of the Hennepin County Police Department. Diaz complains that Fontana was improperly allowed to testify regarding the frequency with which fingerprints are recovered from plastic bags. We review a district court's decision to admit expert testimony for a clear abuse of discretion. See United States v. Chard, 115 F.3d 631, 635 (8th Cir. 1997).

Rule 702 of the Federal Rules of Evidence provides that an expert witness may be qualified "by knowledge, skill, experience, training, or education . . . ." Here, Fontana had twenty-six years of experience in law enforcement, including extensive experience in drug-related investigations. The crime lab that performed the fingerprint testing in this case was under his command. Fontana's experience and knowledge qualified him to testify regarding how common it was for the crime lab to recover adequate fingerprints from plastic bags. His testimony was relevant and helpful to the jury in that it concerned matters beyond the general knowledge of average individuals. See United States v. Shedlock, 62 F.3d 214, 219 (8th Cir. 1995). Thus, the district court did not abuse its discretion in admitting his testimony.

## III.

Diaz also claims that his trial counsel rendered ineffective assistance. Because ineffective assistance claims generally cannot be established without the development of facts outside the record, they should be raised in the context of a proceeding brought under 28 U.S.C. § 2255. See United States v. Hawkins, 78 F.3d 348, 351-52 (8th Cir. 1996), cert. denied, 117 S. Ct. 126 (1996). We will consider such a claim on direct appeal only in those exceptional cases in which the district court has developed a record on the ineffectiveness issue or where the result would otherwise be a plain miscarriage of justice. See United States v. Reddix, 106 F.3d 236, 238 (8th Cir. 1997). This is not such a case, and thus we decline to address the ineffective assistance claim in this proceeding.

## IV.

Diaz argues that his separate convictions for conspiracy to possess cocaine with intent to distribute and for aiding and abetting the possession of cocaine with intent to distribute violated the Double Jeopardy Clause of the Fifth Amendment. Diaz did not raise this claim in the district court, and it is well settled that "[d]ouble jeopardy claims may not be raised for the first time on appeal." United States v. Goodwin, 72 F.3d 88, 91 (8th Cir. 1995). In any event, Diaz's argument is precluded by United States v. Thomas, 971 F.2d 147 (8th Cir. 1992), which holds that separate convictions identical to those in the present case do not constitute a violation of the Double Jeopardy Clause. 971 F.2d at 149.

## V.

Diaz next contends that the evidence was insufficient to support his conviction. When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and give the government the benefit of all reasonable

inferences.  See United States v. Diaz-Diaz, 135 F.3d 572, 577 (8th Cir. 1998).  We will reverse "'only if a reasonable jury must have had a reasonable doubt' that the elements of the crime were established."  United States v. Carlisle, 118 F.3d 1271, 1273 (8th Cir. 1997), cert. denied, 118 S. Ct. 429 (1997) (quoting United States v. Bordeaux, 84 F.3d 1544, 1547 (8th Cir. 1996)).

Diaz's argument rests almost exclusively on his assertion that Arellano's testimony was not credible and should have been disregarded.  Assessing the credibility of witnesses is a matter properly left to the jury.  See United States v. Anderson, 78 F.3d 420, 422-23 (8th Cir. 1996).  The jury heard extensive testimony from Arellano that Diaz had supplied him with a substantial amount of cocaine during August, September, and October of 1996.  This testimony, which the jury apparently found credible, was clearly sufficient to support Diaz's conviction.

## VI.

Diaz's final contention is that the district court made two errors during sentencing.  First, he argues that his offense level should have been decreased pursuant to U.S.S.G. § 2D1.1(b)(6), which reduces the offense level for those defendants who qualify for the safety valve exception set forth in U.S.S.G. § 5C1.2.  Passing the fact that Diaz raises this issue for the first time on appeal, his argument is without merit.  To qualify for the safety valve exception, a defendant carries the burden of demonstrating that "he has truthfully provided to the Government all information regarding the relevant crime before sentencing."  United States v. Velasquez, 141 F.3d 1280, 1283 (8th Cir. 1998); see also U.S.S.G. § 5C1.2(5).  There is nothing in the record indicating that Diaz provided any information whatsoever regarding the relevant crime prior to his sentencing.

Diaz asserts that the district court erred in calculating the quantity of cocaine for sentencing purposes.  We review a district court's drug quantity calculations for clear

error, and we will reverse only if our examination of the entire record "definitely and firmly convinces us that a mistake has been made." United States v. Moss, 138 F.3d 742, 745 (8th Cir. 1998) (quoting United States v. Sales, 25 F.3d 709, 711 (8th Cir. 1994)). Moreover, a district court's findings regarding the credibility of witnesses "are virtually unreviewable on appeal." United States v. Karam, 37 F.3d 1280, 1286 (8th Cir. 1994). In arriving at Diaz's base offense level of 26, the court determined that the quantity of cocaine attributable to Diaz was at least 500 grams but less than 2 kilograms. Diaz does not dispute that the 476 grams of cocaine seized during the search were properly attributed to him. However, he argues that the district court erred in determining that he was accountable for a total quantity of at least 500 grams.

Diaz's argument is meritless. The district court's determination was supported by the testimony of co-defendant Arellano, who testified that during the course of the conspiracy he received numerous multi-ounce deliveries of cocaine from Diaz. That testimony, which the court expressly found credible and reliable, was clearly sufficient to justify a quantity determination of more than 500 grams.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-