# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1530

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Nebraska. |
| Carlos Benitez-Meraz, | * |
| | * |
| Appellant. | * |

_____

Submitted:  November 17, 1998

Filed:  December 7, 1998

_____

Before BEAM and LAY, Circuit Judges, and SIPPEL,[1] District Judge.

_____

LAY, Circuit Judge.

Carlos Benitez-Meraz was convicted of conspiracy to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846.  At sentencing, the district court[2] found at least 78 ounces of methamphetamine attributable to Meraz.

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

After adjusting his base offense level upward two levels for possession of a firearm, the court sentenced him to 235 months imprisonment. Meraz appeals both his conviction and sentence, contending that (1) the district court erred in admitting Rule 404(b) evidence that Meraz possessed and distributed cocaine along with methamphetamine; (2) the government's prosecutor committed prosecutorial misconduct by making improper comments during opening statements, using improper witnesses, and vouching for the credibility of a government witness; (3) the cumulative effect of trial errors and prosecutorial misconduct substantially prejudiced his right to a fair trial; and (4) the court erred in calculating the amount of methamphetamine attributable to him. We affirm.

## I.

Law enforcement officers received information from Antonio Moreno, an individual arrested on drug charges, that Carlos Benitez-Meraz had been one of his methamphetamine suppliers. Acting on that information, the officers made arrangements with a government informant, Erin Quintana, to have her purchase methamphetamine from Meraz. Meraz sold Quintana 6.72 grams of methamphetamine while law enforcement monitored the sale. Meraz was arrested three days later after police stopped and searched a car in which he was a passenger and found 13.03 grams of methamphetamine and guns under his seat, and $3,050 immersed in liquid inside a beverage container located between the two front seats.

The government's witnesses at trial included Antonio Moreno, who was awaiting sentence on federal drug charges at the time of trial. In addition, they called David Greigo, another individual involved in the drug trade, and Erin Quintana, both of whom had non-prosecution agreements with the government.

Moreno testified that he purchased one pound of methamphetamine and cocaine from Meraz. Moreno also testified that he had seen Meraz with a gun during one of

Meraz' methamphetamine deliveries. Moreno identified the gun at trial as one of the guns seized during Meraz' arrest.

Quintana testified that Meraz delivered four ounces of methamphetamine to Moreno's apartment. She also stated in her testimony that she accompanied Meraz to a trailer park where he collected money while possessing a gun, and that Meraz asked her to rent a trailer for him where he could store drugs. She further testified that Meraz threatened her with a gun on one occasion, which she identified at trial as one of the guns seized during Meraz' arrest.

David Greigo testified that he was one of Moreno's drug suppliers and had seen Meraz purchase cocaine and approximately three pounds of methamphetamine from an individual named Jaringas who lived at a trailer park in Lexington, Nebraska. He also testified that Meraz delivered four ounces of methamphetamine to an individual named Connie Emery, and attempted to deliver one-half kilogram of methamphetamine and one kilogram of cocaine to an individual named Rhonda Morrow. It was later discovered that Greigo was in the United States illegally at the time he testified at trial.

Based on these facts and other evidence presented at trial, the jury found Meraz guilty. Meraz now appeals.

## II.

### A. Admission of Rule 404(b) Evidence

During trial, the court admitted testimony from Greigo and Moreno that Meraz possessed and distributed cocaine as well as methamphetamine. The district court conducted hearings outside the presence of the jury before allowing the cocaine testimony. The court found the cocaine evidence admissible as proper Rule 404(b) evidence to prove Meraz' intent and knowledge. The court instructed the jury at the

time of Moreno's and Greigo's testimony and again at the close of trial about the limited purposes for which they could use the evidence.

Meraz argues that the district court abused its discretion by admitting testimony from Greigo and Moreno that Meraz possessed and distributed cocaine. *See* Fed. R. Evid. 404(b). Meraz claims the testimony was unreliable and more prejudicial than probative because it was uncorroborated and the witnesses were merely seeking to benefit themselves through their testimony.

We review the admissibility of other crimes or wrongful acts evidence under the abuse of discretion standard. *United States v. Smith*, 49 F.3d 475, 478 (8th Cir. 1995). We find no error in the district court's admission of the evidence regarding Meraz' possession and distribution of cocaine. The court applied the appropriate standard by considering the four factors for admissibility[3] when deciding whether to admit the evidence. Because the testimony connected Meraz to possession and distribution of cocaine, it was directly relevant to the issue of his knowledge and intent to distribute methamphetamine in this case. *See United States v. Logan*, 121 F.3d 1172, 1178 (8th Cir. 1997) (recognizing that evidence of prior drug possession "is admissible to show such things as knowledge and intent of a defendant charged with a crime in which intent to distribute drugs is an element"). The cocaine transactions took place during the same time period as the alleged methamphetamine transactions, and two independent witnesses testified to witnessing cocaine transactions. The district court could reasonably find that the probative value of the evidence substantially outweighed its prejudicial effect. Balancing the probative value of evidence concerning other crimes or wrongs against its potential prejudicial effect is within the broad discretion of the district court. *United States v. Perkins*, 94 F.3d 429, 435 (8th Cir. 1996), *cert.*

---

[3]Evidence of other crimes or wrongful acts is admissible if it is: (1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to crime charged. *United States v. Logan*, 121 F.3d 1172, 1178 (8th Cir. 1997).

*denied*, ___ U.S. ___, 117 S. Ct. 1004 (1997); *United States v. Brown*, 956 F.2d 782, 786 (8th Cir. 1992). In this case, any such prejudice was minimized by the district court's instructions to the jury that it could consider the cocaine testimony only to evaluate Meraz' intent or knowledge and not to determine his guilt or innocence. Thus, the district court did not abuse its discretion by admitting evidence of Meraz' possession and distribution of cocaine.

## B. Prosecutorial Misconduct

Meraz claims the government's prosecutor committed prosecutorial misconduct by making improper statements during opening statement, misleading the jury, and vouching for the credibility of a government witness. He claims that each error requires reversal individually, and that the cumulative effect of the prosecutorial misconduct combined with the admission of the aforementioned Rule 404(b) evidence denied him a fair trial. We find his arguments are without merit.

This court has established a two-part test for whether a prosecutor's conduct constitutes reversible prosecutorial misconduct: (1) the prosecutor's remarks or conduct must have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. *United States v. Johnson*, 968 F.2d 768, 770 (8th Cir. 1992). Courts consider three factors to determine the prejudicial effect of prosecutorial misconduct: (1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence; and (3) the curative actions taken by the trial court. *United States v. Hernandez*, 779 F.2d 456, 460 (8th Cir. 1985). Applying these factors, we conclude the government's prosecutor did not commit prosecutorial misconduct that warrants reversal.

## 1. Opening Statements

Meraz claims the district court abused its discretion by denying his request for a mistrial after the prosecutor stated in her opening statement that she believed a gun found during Meraz' arrest was stolen.[4] We disagree. Even if this statement was improper, it did not prejudicially effect Meraz' right to a fair trial. No evidence or testimony was presented during trial that Meraz stole the gun or knew it was stolen, and no mention of a stolen gun was ever made again during trial. The district court also instructed the government to make no further reference to whether the gun was stolen.

Likewise, the prosecutor did not commit prosecutorial misconduct by telling the jury in her opening statement that "[l]aw enforcement found David Greigo, I believe it was December of 1996, and at the time they talked to him he was in the state penitentiary in Lincoln." Tr. 55:12-14. Meraz claims this comment was improper because Greigo was an illegal alien "allowed to remain without prosecution as long as he 'assisted' law enforcement." Appellant's Br. at 11. We review the prosecutor's statement for plain error because Meraz did not object at trial. *United States v. Abrams*, 108 F.3d 953, 955 (8th Cir. 1997). We fail to see how this statement is improper or plain error because the prosecutor merely explained to the jury where and when law enforcement contacted Greigo.

## 2. Misleading the Jury

Meraz argues that the prosecutor misled the jury by failing to disclose that Greigo was an illegal alien and by failing to correct Greigo's testimony that he did not expect to receive any benefit from his testimony through his non-prosecution agreement. We review for plain error because Meraz made no objection at trial. *Abrams*, 108 F.3d at 955. We find no error. Meraz' arguments are unavailing because

---

[4]The prosecutor stated during her opening statement, "Ms. Porter consents to the search of her car and found in the car are 13.03 grams of methamphetamine under the front passenger seat. There are two guns, a .357 Smith & Wesson gun and a nine millimeter Browning gun that I believe was stolen." Tr. 53:22-54:1.

Greigo admitted during his testimony to signing a non-prosecution agreement and later agreed with defense counsel's characterization of his agreement as "a good thing." Tr. 109:22-110:4. Furthermore, the prosecution was unaware during trial of his illegal alien status, and his non-prosecution agreement with law enforcement was unrelated to his illegal alien status.

### 3. Vouching for Witness Credibility

Meraz claims that the prosecutor improperly vouched for Erin Quintana's credibility while questioning her about her non-prosecution agreement on re-direct examination. After defense counsel cross-examined Quintana about the benefits she would receive by signing the non-prosecution agreement, the prosecutor referred Quintana to the agreement on re-direct examination and asked her whether it obligated her to testify truthfully.[5] The prosecutor also asked Quintana whether she understood

---

[5]Meraz complains about the following line of questioning:

> Q. (Prosecutor) In Exhibit 5, conditional nonprosecution agreement, did you also promise in that agreement to truthfully disclose all information with respect to the activities of yourself and all others and in all matters about which you have knowledge relating to the distribution of controlled substances in the federal District of Nebraska?
>
> A. (Quintana) Yes.
>
> Q. Did you also promise to truthfully testify if subpoenaed before the grand jury, or any trial, or any other court proceeding?
>
> A .Yes.
>
> Q. Did you also promise not to commit any crimes whatsoever?
>
> A. Yes.
>
> Q. Did you also understand that should you commit any crimes, or

that she would be subject to prosecution if the United States Attorney's Office, in its sole discretion, determined that she had provided false, misleading, or incomplete information. Meraz claims that the prosecutor improperly vouched for Quintana through this line of questioning because it implied to the jury that the prosecutor believed Quintana was testifying truthfully and placed the integrity of the government behind her. We disagree.

Improper vouching may occur when the government: (1) refers to facts outside the record or implies that the veracity of a witness is supported by outside facts that are unavailable to the jury; (2) implies a guarantee of truthfulness; or (3) expresses a personal opinion about the credibility of a witness. *United States v. Santana*, 150 F.3d 860, 863 (8th Cir.1998). In this case, however, the prosecutor merely asked about an agreement that had been received into evidence by the district court and would be available to the jury during deliberations. The prosecutor did not imply that Quintana was telling the truth, but rather asked Quintana about the terms of the agreement and if she understood the potential consequences if she failed to comply with them. As this court recently stated, "'[e]vidence of the existence, the terms, and the witness's understanding of a plea or witness immunity agreement is not vouching.'" *Id.* (quoting *United States v. Beasley*, 102 F.3d 1440, 1450 (8th Cir. 1996), *cert. denied*, __ U.S. __, 117 S. Ct. 1856 (1997)).

---

should it be judged by the United States Attorney's Office in its sole discretion that you have given false, incomplete or misleading testimony or information, or otherwise violated any provision of this agreement, you shall thereafter be subject to any prosecution for any federal criminal violation of which this office has knowledge, including but not limited to perjury and obstruction of justice?

A. Yes.

Tr. 380:20-381:16.

## C. Amount of Methamphetamine Attributable to Meraz

Meraz asserts that the district court erred in calculating the quantity of methamphetamine attributable to Meraz for sentencing purposes. We review a district court's drug quantity calculations for clear error. *Santana*, 150 F.3d at 864. We reverse the district court's calculation "only if our examination of the entire record 'definitely and firmly convinces us that a mistake has been made.'" *Id.* (citations omitted.)

At sentencing, the trial court attributed 78 ounces of methamphetamine to Meraz. It then converted the 78 ounces of methamphetamine into marijuana using the conversion tables contained in the sentencing guidelines because multiple substances were involved, and arrived at 4422.6 kilograms of marijuana. This attribution meant that Meraz' base offense level was set at level 34 under the federal sentencing guidelines. *See* United States Sentencing Commission, <u>Guidelines Manual</u>, §§ 2D1.1(a)(3), 2D1.1(c)(3) (Nov. 1998). The court then adjusted his base offense level upward two levels for possession of a firearm. *Id.* § 2D1.1(b)(1). Meraz challenges the district court's attribution, arguing that the district court's finding was not supported by reliable evidence. We disagree.

Meraz does not dispute that the 19.75 grams of cocaine seized during his arrest and sold to Quintana were properly attributable to him. However, he disputes the district court's reliance on trial testimony to find him accountable for a total of 78 ounces of methamphetamine. Meraz' argument is meritless because the district court's calculation was supported by the testimony of Greigo and Moreno. This court has clearly held that the district court is not limited to the actual amount of drugs seized when imposing a sentence, but can consider witness testimony and determine its credibility when calculating the total amount of drugs involved in the conspiracy. *United States v. Wessels*, 12 F.3d 746, 753-54 (8th Cir. 1993), *cert. denied*, 513 U.S.

831 (1994); *United States v. Duckworth*, 945 F.2d 1052, 1054 (8th Cir. 1991). Furthermore, witness credibility is an issue for the sentencing judge that is "virtually unreviewable on appeal." *United States v. Karam*, 37 F.3d 1280, 1286 (8th Cir. 1994), *cert. denied*, 513 U.S. 1156 (1995). In this case, the trial testimony attributed at least 78 ounces of methamphetamine to Meraz. Therefore, we conclude that the district court's findings regarding the quantity of methamphetamine involved were reasonably supported by the evidence and are not clearly erroneous.

III.

For the reasons stated above, we affirm Meraz' conviction and sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.