# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2718

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska |
| Ayite Ose Codjo, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 19, 1999

Filed:  November 8, 1999

_____

Before McMILLIAN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit
     Judges.

_____

McMILLIAN, Circuit Judge.


Ayite Ose Codjo appeals from a final judgment entered in the United States
District Court[1] for the District of Nebraska upon a jury verdict finding him guilty of two
counts of counterfeiting.  For reversal, Codjo argues that the evidence was insufficient
as a matter of law to support the jury's verdict and that defense counsel was

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District
of Nebraska.

constitutionally ineffective in failing to request a limiting instruction regarding certain evidence introduced at trial.  Jurisdiction was proper in the district court based upon 18 U.S.C. § 3231.  Jurisdiction is proper in this court based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).  For the reasons discussed below, we affirm the judgment of the district court.

Codjo was indicted on December 17, 1997, on two counts of counterfeiting, in violation of 18 U.S.C. § 472. Count I charged him with passing counterfeited obligations of the United States on November 13, 1997, and Count II charged him with passing counterfeited obligations of the United States on August 22, 1997.  Codjo was tried by a jury on March 23-25, 1998.

The evidence introduced at trial, viewed in the light most favorable to the government, indicated the following.  On August 22, 1997, Codjo attempted to purchase a money order in the amount of $400.00 at the Albertson's supermarket at 108th and Q Streets in Omaha, Nebraska, using four one-hundred dollar bills.  The employee working at the customer service counter observed that the bills were yellowed, dingy, and felt waxy.  She tested them with a counterfeit detection pen,[2] which left a mark on the bills indicating that the bills were counterfeit.  An assistant manager was called over, and he informed Codjo that the store would not accept the bills.  Codjo took the bills and left the store.  A store employee took down the license plate number on Codjo's car and the police were notified.  Three days later, on August 25, 1997,  a special agent with the United States Secret Service visited Codjo at his apartment. Codjo generally confirmed the events as described above and claimed that he had crumpled up the four one-hundred dollar bills and thrown them on the ground while walking to his car.  He also claimed that he received the bills while

---

[2]According to the government, these counterfeit detection pens are not endorsed by the United States Secret Service, but their use by merchants is encouraged by the Secret Service.  See Brief for Appellee at 12.

gambling at one of the casinos in Council Bluffs, Iowa, but he could not remember which casino. The four one-hundred dollar bills were never recovered.

On the night of November 13, 1997, Codjo went to a Baker's grocery store at 84th and Frederick in Omaha, Nebraska, and asked for a Western Union money order. Codjo filled out the money order form using the name "Oliivier, Ayite" and a false address and false telephone number. He transferred $900.00 to an individual in Togo, using nine one-hundred dollar bills. The next day, November 14, 1997, the same bills were delivered to the bank in the Baker's store's daily deposit, along with other cash and checks from the store. The total amount of the deposit exceeded $17,000. The cash was run through a "jet sorter" which selected out five one-hundred dollar bills as counterfeit. The five counterfeit bills were sent to the United States Secret Service.

On November 16, 1997, Codjo returned to the same Baker's grocery store to send another Western Union money order. This time he filled out the money order form using the name "Olivier Ayite," a slightly different address (also false), and no telephone number. The employee working at the counter used a counterfeit detection pen on the two one-hundred dollar bills provided by Codjo.[3] A mark appeared on one of the two bills, indicating that it was counterfeit. Codjo claimed that he got that bill from a casino and quickly produced a different one-hundred dollar bill to complete the transaction.

After learning that five counterfeit one-hundred dollar bills had been forwarded to the bank from the Baker's store in its daily deposit on November 14, 1997, a Baker's

---

[3]Although the Baker's store had a policy that all fifty and one-hundred dollar bills presented at the customer service counter should be tested with a counterfeit detection pen, there was no testimony at trial about whether or not any of the nine one-hundred dollar bills presented by Codjo on November 13, 1997, were tested with a counterfeit detection pen at the time they were presented.

employee compared the Western Union money order form filled out by Codjo on November 13th with the form he filled out on November 16th and discovered that the funds were transferred to the same individual at the same location in Lome, Togo. Upon comparison, it was also noted that the sender names on the forms were virtually identical, but the addresses were somewhat different, and one form listed a telephone number and the other did not. Because the addresses and the telephone number listed on the two forms were false, the money could not have been returned to Codjo if the store had been unable to complete either of the transfers.

In view of Codjo's claim to the secret service agent that he had received the suspicious one-hundred dollar bills at a casino in Council Bluffs, Iowa, the government called as a witness the finance manager for one of the three casinos in Council Bluffs. She testified that she was responsible for making sure that no counterfeit bills were passed along to customers at the casino. She testified that, consistent with state law requirements, the casino would test each fifty and one-hundred dollar bill received by the casino a total of six times, using two different machines, before putting such bills back into circulation. She testified that all of the casinos in Council Bluffs were bound by the same state law requirements. In addition, the Albertson's employees who testified regarding the events of August 22, 1997, each stated that, in their experience, the incident involving Codjo was the only time that bills presented at their store actually tested positively with the use of a counterfeit detection pen.

Defense counsel moved for judgment of acquittal at the end of the government's case, and the motion was denied. The jury found Codjo guilty on both counts. Codjo was sentenced on June 18, 1998, to time served, two years of supervised release, special assessments totaling $100.00, and restitution in the amount of $500.00. See United States v. Codjo, No. 8:97CR215-1 (D. Neb. June 19, 1998) (judgment). Codjo appealed.

-4-

Codjo first argues that the evidence was insufficient as a matter of law to support the jury's verdict because the jury could not conclude beyond a reasonable doubt: (1) that the allegedly counterfeit bills found in the Baker's store's daily deposit on November 14, 1997, actually came from him, or (2) that the bills he presented at the Albertson's store on August 22, 1997, were in fact counterfeit or that he knew they were counterfeit. See Brief for Appellant at 11 (citing United States v. Armstrong, 16 F.3d 289, 292 (8th Cir. 1994) ("Under 18 U.S.C. § 472, the government has the burden of showing not only that an accused passed or possessed counterfeit money, but that he [or she] did so with intent to defraud.")).

"We view the evidence in a light most favorable to the verdict, giving the verdict the benefit of all reasonable inferences, and will reverse only if the jury must have had a reasonable doubt concerning one of the essential elements of the crime." United States v. Pullman, 187 F.3d 816, 818 (8th Cir. 1999). "The essential elements of the charged offense may be proven by circumstantial evidence, and the evidence need not exclude every reasonable hypothesis except guilt." United States v. Armstrong, 16 F.3d at 292. Upon careful review of the record in the present case, we hold that the evidence was sufficient for the jury to find Codjo guilty on each count in the indictment.

Codjo also argues on appeal that his counsel at trial was constitutionally ineffective for failing to request a jury instruction regarding the limited purpose for which the evidence concerning the events of November 16, 1997, was admitted pursuant to Fed. R. Evid. 404(b).

"We have stated time and again that ineffective assistance claims are best presented in a motion for post-conviction relief under 28 U.S.C. § 2255." United States v. Martinez-Cruz, 186 F.3d 1102, 1105 (8th Cir. 1999). We ordinarily will not consider an ineffective assistance claim unless it has been presented to the district court first, so that a proper factual record can be made. See id. Because Codjo did not first

present this ineffective assistance claim to the district court, nor has he asserted on appeal extraordinary circumstances showing that a plain miscarriage of justice will otherwise result, we decline to address the merits of his ineffective assistance claim. See United States v. Santana, 150 F.3d 860, 863 (8th Cir. 1998) ("We will consider such a claim on direct appeal only in those exceptional cases in which the district court has developed a record on the ineffectiveness issue or where the result would otherwise be a plain miscarriage of justice.").

The judgment of the district court is affirmed. See 8th Cir. R. 47B.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.