# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

03-3973

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Kenneth Scott, | * | |
| | * | [UNPUBLISHED] |
| Appellant. | * | |

_____

Submitted: December 1, 2004
Filed: May 26, 2005

_____

Before BYE, MELLOY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Kenneth Scott was charged with knowingly possessing pseudoephedrine with knowledge or reasonable cause to believe it would be used to manufacture methamphetamine, and with unlawful possession of a firearm as a previously convicted felon. Scott filed a motion to suppress evidence and statements, which the district court[1] denied. Through counsel, Scott waived his right to a jury trial and

_____

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri, adopting the report and recommendations of the Honorable Frederick R. Buckles, United States Magistrate Judge for the Eastern District of Missouri.

requested permission to proceed pro se. He was permitted to proceed pro se with his former attorney as standby counsel, and after a bench trial, the court denied Scott's motions for a judgment of acquittal and found him guilty on both counts.

The presentence report ("PSR") prepared by the United States Probation Office grouped the two counts and recommended a base offense level of 32, based on a total quantity of 115.4 grams of pseudoephedrine, a two-level increase because Scott had possessed a firearm, and a two-level increase because Scott was the organizer of the drug activity. The PSR also recommended a Category IV criminal history based on seven points, including three points for a 1991 four-year sentence for burglary and stealing, and two points each for two concurrent 1995 sentences for stealing. These proposed findings resulted in a guideline range of 262-327 months' imprisonment. Scott disputed the PSR's drug-quantity finding, both offense-level enhancements, and the assessment of three points for his 1991 sentence. At sentencing, he also asserted that he was entitled to a reduction for acceptance of responsibility. The court found that Scott was responsible for 157.4 grams of pseudoephedrine, that both offense-level increases were appropriate, and that Scott was not entitled to an acceptance of responsibility reduction. The district court sentenced Scott to 296 months' imprisonment.

Counsel for Scott has filed a brief under *Anders v. California,* 386 U.S. 738 (1967), suggesting that the district court erred in denying Scott's motion to suppress statements made before and after his arrest, and evidence seized from his vehicle pursuant to a consent search and an inventory search. Counsel also suggests that the district court erred by denying Scott's motion for a judgment of acquittal. Counsel renews Scott's objection to several sentencing decisions, including the drug quantity calculation, the role enhancement, the assessment of criminal history points for the 1991 offense, and the denial of a reduction for acceptance of responsibility. In a pro se supplemental brief, Scott argues that he received ineffective assistance of counsel, and in an additional supplemental brief which he has moved for leave to file, he

argues that the sentence violated his Sixth Amendment rights based on the reasoning of *Blakely v. Washington*, 124 S. Ct. 2531 (2004).

The encounter between Scott and law enforcement officers occurred after a Missouri Highway Patrol corporal, Perry Hazelwood, overheard a police dispatch concerning a suspicious purchase of pseudoephedrine pills at a Target store. Hazelwood conducted an immediate investigation of the purchase, and then located at a convenience store the vehicle in which the purchaser was observed leaving the store. When Hazelwood encountered the driver of the vehicle, defendant Scott, in the convenience store, he told Scott that he "need[ed] to talk to [him] about [the vehicle]." During a conversation outside the store, Scott admitted buying the pseudoephedrine pills, but claimed they were for a cold. Hazelwood requested consent to search the vehicle, and according to the officer, Scott consented. Upon finding evidence methamphetamine manufacture in the vehicle, Hazelwood placed Scott under arrest. After he was administered *Miranda* warnings at the police station, Scott made admissions regarding the purchase of the pills. In the meantime, the state patrol conducted an inventory search of Scott's vehicle, and discovered more evidence of illegal drug activity.

We believe that the district court properly denied Scott's motion to suppress his pre-arrest statements at the convenience store and the evidence obtained from his vehicle pursuant to the consent search. Corporal Hazelwood testified that he did not force or otherwise coerce Scott into stepping outside and answering his questions, and the district court was entitled to credit this testimony over Scott's conflicting version. *See United States v. Hernandez*, 281 F.3d 746, 748 (8th Cir. 2002) (credibility determinations of district court are "virtually unreviewable"); *see also United States v. Drayton*, 536 U.S. 194, 201 (2002) ("Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search . . . provided they do not induce cooperation by coercive means."). Hazelwood also testified that Scott "responded

-3-

positively" and "did not seem to [have] any objection" when asked for permission to search his vehicle, and this testimony supports the district court's finding that Scott consented to the search even though a written consent form was not executed. *See United States v. Jones,* 254 F.3d 692, 695 (8th Cir. 2001) ("Consent can be inferred from words, gestures, and other conduct"); *United States v. Chaidez,* 906 F.2d 377, 381-82 (8th Cir. 1990) ("a search may be justified by a voluntary oral consent even in the absence of a valid written consent").

We also conclude that the district court properly denied Scott's motion to suppress statements made after Scott's arrest, and evidence uncovered during the inventory search of his car. The record included Hazelwood's testimony that his search of Scott's vehicle revealed coffee filters, aluminum foil, plastic tubing, and a cooler that smelled of ether, and the testimony of Officer Alford, who advised Scott of his rights and testified that Scott indicated that he understood and waived those rights. This testimony supports the district court's conclusion that Hazelwood had probable cause to arrest Scott and that Scott's subsequent incriminating statements and actions were voluntary and made with the benefit of *Miranda* warnings. *See United States v. Syslo,* 303 F.3d 860, 865 (8th Cir. 2002) (per curiam) (waiver of Fifth Amendment right against self-incrimination is voluntary if it is product of free and deliberate choice rather than intimidation, coercion, or deception); *United States v. McClain,* 171 F.3d 1168, 1170 (8th Cir. 1999) (existence of probable cause to make warrantless arrest depends on whether, at moment arrest was made, facts and circumstances within officer's knowledge were sufficient for prudent man to believe defendant had committed or was committing crime); *cf. United States v. Nation,* 243 F.3d 467, 469-70 (8th Cir. 2001) (observation of items including used coffee filters, plastic and glassware, along with odor of ether, "raised sufficient suspicion of criminal activity to support a finding of probable cause" for issuance of search warrant). It is also clear that the police had authority to inventory the vehicle after Scott was arrested. *See Colorado v. Bertine,* 479 U.S. 367, 371-72 (1987).

We also believe that the record supports the district court's denial of Scott's motion for judgment of acquittal. Scott stipulated at trial that he was a convicted felon, and that the rifle found in his vehicle had previously traveled in and affected interstate commerce. *See* 18 U.S.C. § 922(g). The trial testimony of both Officer Hazelwood and Officer Alford also demonstrated that Scott admitted buying pseudoephedrine and intending to use it to manufacture methamphetamine. The verdict is entitled to all reasonable inferences, *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999), and this testimony amply supports Scott's conviction.

Scott also raises several objections to the district court's calculation of the appropriate guidelines range under the United States Sentencing Guidelines. We find these objections to be without merit. The trial and sentencing testimony of both Corporal Hazelwood and Officer Alford, which the district court credited, demonstrated that 55.4 grams of pseudoephedrine had been found hidden in a doghouse, that Scott admitted he intended to use that pseudoephedrine to make methamphetamine, and that Scott admitted to prior manufactures that would have required an estimated 102 grams of pure pseudoephedrine. This testimony supports the court's determination that Scott should be held accountable for 157.4 grams of pseudoephedrine. *See United States v. Patterson*, 258 F.3d 788, 790-91 (8th Cir. 2001) (at sentencing, court may consider drug transactions which were part of regular pattern or scheme of drug activity). The district court's decision to impose a two-level enhancement based on Scott's leadership role in the drug offense was not clearly erroneous, because during the course of the trial and the sentencing hearing, both Hazelwood and Alford testified that Scott told them another person had assisted him in making methamphetamine by obtaining precursors and acting as a look-out. *See* USSG § 3B1.1(c); *United States v. Yerkes*, 345 F.3d 558, 563 (8th Cir. 2003) (government need only prove that defendant controlled at least one other participant in drug offense to impose two-level role enhancement; role enhancement was proper where, according to testimony, at least two others had bought methamphetamine precursors for him at his request).

Further, the district court did not clearly err in denying an acceptance-of-responsibility reduction, *see* USSG. § 3E1.1, comment. (n.2) (reduction not intended to apply to defendant who puts government to its burden at trial by denying essential factual elements of guilt), and Scott was properly assessed three criminal history points for his 1991 sentence for burglary and stealing. Although Scott served less than one year of his four-year sentence, criminal history points are assessed based on the sentence pronounced, not the time served. *See* USSG § 4A1.2, comment. (n.2).

In light of *United States v. Booker*, 125 S. Ct. 738, 756 (2005), we agree with Scott that the district court's application of mandatory sentencing guidelines, combined with its findings concerning drug quantity and role in the offense, was contrary to the Sixth Amendment as applied in *Booker*. Scott did not raise a Sixth Amendment objection in the district court, however, and we thus review his sentence under the plain error standard. We find that Scott's substantial rights were not affected by the court's erroneous application of mandatory sentencing guidelines, because the record as a whole does not establish a "reasonable probability" that he would have received a more favorable sentence had the court considered the guidelines as advisory. *See United States v. Pirani*, No. 03-2871, slip op. at 11 (8th Cir. Apr. 29, 2005) (en banc). The guidelines recommended a sentence between 262 and 327 months, and the district court imposed a sentence of 296 months' imprisonment. Because this sentence is at the middle of the guideline range, and we have no other reason based on the record to believe the court would have imposed a more favorable sentence had it understood that the guidelines were only advisory, we determine that Scott has failed to show that his substantial rights were affected by the court's erroneous application of the mandatory guidelines.

Scott's claim of ineffective assistance is properly addressed in a habeas corpus proceeding under 28 U.S.C. § 2255. *See United States v. Santana,* 150 F.3d 860, 863 (8th Cir. 1998) (appeals court will consider ineffective-assistance claim on direct appeal only in exceptional cases in which record on ineffectiveness issue exists or

where result would otherwise be miscarriage of justice). Although Scott has elected to proceed pro se on appeal with counsel apparently acting on a "standby" basis, we nonetheless have conducted an independent review of the record under *Penson v. Ohio*, 488 U.S. 75, 80 (1988), and we find no other nonfrivolous issues. Accordingly, Scott's motion to file a supplemental brief is granted, and we affirm. We grant counsel's motion to withdraw on the condition that counsel complies with Part V of this court's Amended Criminal Justice Act Plan.

———————————————