**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

———————————

No. 97-3423WM

———————————

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * On Appeal from the |
| v. | * United States District Court |
| | * for the Western District |
| | * of Missouri. |
| Lord Kang, | * |
| | * |
| Appellant. | * |

———————————

Submitted:  April 14, 1998
Filed:  April 23, 1998

———————————

Before RICHARD S. ARNOLD,[1] Chief Judge, LAY and LOKEN, Circuit Judges.

———————————

RICHARD S. ARNOLD, Chief Judge.

This is a drug case in which the issues on appeal relate to the length of the sentence imposed on the defendant, Lord Kang.  Kang pleaded guilty to one count of possessing cocaine base or "crack" with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) (1994), and one count of distributing cocaine base or "crack," in

———————————

[1]The Hon. Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998.  He has been succeeded by the Hon. Pasco M. Bowman II.

violation of the same statute.  The plea was entered in accordance with the terms of a plea-bargain agreement made by Kang and the government.  The District Court imposed a sentence of 87 months (seven years and three months) on each of the two counts, with the time to be served concurrently.

On this appeal, Kang makes three arguments, each of which we shall discuss in turn.  His principal point relates to the quantity of drugs attributed to him by the sentencing court, a factor which is crucially relevant to the length of the term of imprisonment.  The District Court attributed to Kang more than 50 grams of crack, yielding a base offense level of 32.  In making this decision, the Court held that Kang had agreed, as part of the plea-bargain agreement, to this amount of drugs.  We disagree.  In our opinion, the plea-bargain agreement contained no such stipulation.  We therefore reverse and remand for further proceedings with respect to the sentence.

## I.

For the most part, the arguments of both sides on appeal revolve around the terms of the plea-bargain agreement.  There is no question of guilt or innocence as to the offenses of conviction, because Kang pleaded guilty to both of them.  Kang's first argument relates to the phrase "cocaine base or 'crack,'" which appears several times in the agreement.  The substance that Kang is accused of having possessed and distributed is referred to consistently as "cocaine base or 'crack.'"  Kang complains that his sentence was calculated as if the substance were simply "crack," a particularly potent form of cocaine base.  Under the rule of lenity, he argues, the phrase "cocaine base or 'crack,'" appearing as it does in the disjunctive, must be interpreted as limited to "cocaine base," as opposed to "crack," because, Kang says, such an interpretation would produce a shorter sentence.

It is true that powder cocaine is less severely treated under the Sentencing Guidelines than "crack," a form of the drug that can be smoked and has been found by Congress to be more addictive. Kang's argument in the present case must fail, however, because "cocaine base" and "crack," as those words are used in the Sentencing Guidelines, are the same thing. Although chemically there are forms of cocaine base that are not "crack," the Guidelines make the two terms synonymous for sentencing purposes. The notes to the Drug Quantity Table in the Sentencing Guidelines, Section (D), provide as follows: "'cocaine base' for the purposes of this guideline, means 'crack.'" Thus, the phrase "cocaine base or 'crack'" is simply an expanded way of saying "crack." "Cocaine base" and "crack" are synonyms. There is no difference between the two, so far as the Sentencing Guidelines as presently written are concerned, and it therefore cannot be said that "cocaine base" would produce a less severe sentence than an equal quantity of "crack." The argument based on the rule of lenity therefore fails.

## II.

Kang's next argument is more substantial. The two counts to which Kang pleaded guilty, the offenses of conviction, involved a total of 6.84 grams of "crack." This quantity, under the Sentencing Guidelines, would produce a base offense level of 26. The District Court sentenced Kang, however, on the basis of between 50 and 150 grams of "crack," producing a base offense level of 32. After a three-level decrease for acceptance of responsibility under § 3E1.1 of the Guidelines, the total offense level ended up at 29. This level, combined with Kang's criminal history category of I, leads to a range of imprisonment of between 87 and 108 months. The District Court sentenced Kang at the bottom of this range, 87 months. If Kang had been sentenced on the basis of the 6.84 grams involved in the offenses of conviction, assuming that the rest of the Guidelines calculation remained unchanged, his total offense level would have been 23, leading to an imprisonment range of 46 to 57

months.  Kang asserts that it was error to attribute to him more than 50 grams, in view of the fact that the government produced, at the sentencing hearing, no evidence that Kang had been involved in any transactions beyond the offenses of conviction.

If a defendant contests at sentencing a particular fact relevant to sentencing, the government, in general, has the burden of proving that fact by a preponderance of the evidence.  The government admittedly introduced no evidence to connect Kang with more than 6.84 grams.  Instead, the government claims, and the District Court held, that Kang had stipulated to his involvement with between 50 and 150 grams.  The stipulation, the government argues, was contained in the plea-bargain agreement.  The relevant portion of the agreement appears in paragraph 10, and reads as follows:

> 10.  The parties understand and agree that the stipulations and recommendations contained in the agreement are not binding on either the Court or the United States Probation Office.  The United States submits that pursuant to the Guidelines promulgated pursuant to Title 28, United States Code, Section 994, the most applicable offense level as to Counts Three and Nine of the indictment would be determined as follows:
>
> > A.  Section 2D1.1 of the Guidelines is the most applicable to the statute of conviction, in that the amount of cocaine base or "crack," including relevant conduct of defendant under Section 1B1.3, is more than 50 grams and less than 150 grams of cocaine base or "crack," yielding a Base Offense Level of 32.

It is clear to us that the agreement contains no such stipulation. The operative language is "the United States submits."  All of the information with respect to drug

quantity appears following this language.  The effect of this portion of paragraph 10 is simply to set out the position of the government with respect to sentencing.  The defendant in no way agrees to this position.  Contrast the language of paragraph 9, which includes the phrase "the parties stipulate."  The language of paragraph 10 is unambiguous, and the words cannot bear the construction put upon them by the government.  The government is bound by the agreement that it made.

The United States makes two arguments in response.  First, it contends that the construction that we have indicated would make the agreement meaningless.  Why would the government make a plea-bargain agreement in the first place, it says, if the agreement did not nail down the quantity of drugs, probably the single most important fact for sentencing purposes?  We do not know why the government made the agreement that it did, but we are in no doubt as to the meaning of the agreement.  As to whether the agreement as written makes sense, we have little trouble in concluding that it does.  As with any contract, each party undertakes certain obligations.  The defendant agrees to plead guilty to two counts, and the government agrees to dismiss  four other counts.  In paragraph 4, the United States and the defendant agree on the facts constituting the two offenses of conviction.  The agreement contains numerous other undertakings and promises on both sides.  It certainly is not deprived of all sense by interpreting the words "the United States submits" to have their ordinary meaning.

Secondly, the government relies on certain remarks made by counsel at the  guilty-plea hearing.  The following colloquy occurred among the Court, the defendant's lawyer, and the Assistant United States Attorney:

> THE COURT: Now, as I stated, the sentence will probably come under the sentencing guidelines.

Mr. Smith, have you made a calculation as to the probable sentence called for under the sentencing guidelines?

MR. SMITH: Yes, I have, Your Honor.

THE COURT: What would that be?

MR. SMITH: Your Honor, if I may refer to the reference material. Your honor, based upon the facts and the terms of the plea agreement, we have calculated that Mr. Kang's likely sentence would be around Level 29, or possibly Level 28, resulting in an incarceration period of between 87 to 108 months, or possibly slightly less.

MR. RUSH: Judge, if I may just for the record. Mr. Smith, the stipulation of the plea agreement to the drug amount places him at a Level 32. And I believe, just for clarification, the 29 that he's referring to would be after three points for acceptance.

In this passage, Mr. Smith is counsel for the defendant, and Mr. Rush is counsel for the United States. The government stresses the fact that defense counsel, in referring to the terms of the plea agreement, stated that "we have calculated that Mr. Kang's likely sentence would be around Level 29, or possibly Level 28, resulting in an incarceration period of between 87 to 108 months . . .." Immediately thereafter, the Assistant United States Attorney states that "the stipulation of the plea agreement to the drug amount places him at a Level 32. And I believe, just for clarification, the 29 that he's referring to would be after three points for acceptance."

The government did indeed refer to a "stipulation" as to the drug amount. Defense counsel, however, does not characterize the plea agreement as containing a

stipulation to that effect, but simply states that "we have calculated . . . Mr. Kang's likely sentence . . .." This language could amount to an acknowledgment that the plea-bargain agreement, contrary to its own plain terms, amounted to a stipulation as to the relevant amount of drugs, but it certainly need not be read to convey such a meaning. The statement may mean simply that the defense and the government have computed what the sentence is likely to be if the government is able to substantiate with proof its submission as to the appropriate quantity of drugs to be attributed to the defendant. We do not believe that this ambiguous passage is strong enough to convert the plain language of the plea-bargain agreement into something that it is not. A stipulation by a defendant in a criminal case, especially as to a matter this important, should be free of ambiguity. Accordingly, we reject the government's argument that this colloquy is clear enough to convert a statement of the government's position into a stipulation of both parties. It follows that it was not proper, on this record, to sentence defendant on the basis of 50 or more grams of crack. Such a sentence would require evidence, and none has been introduced.

## III.

Defendant's last argument has to do with his claim that he should have been given a two-level reduction in his offense level under the "safety valve" provisions of U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f) (1994). Section 5C1.2 provides, in relevant part, as follows:

(1) The defendant does not have more than one criminal history point, as determined under the sentencing guidelines;

(2) The defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or entice another participant to do so) in connection with the offense;

> (3)  The offense did not result in death or serious bodily injury to any person;
>
> (4)  The defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> (5)  Not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.  . . .

It is undisputed that defendant meets requirements (1) through (4). At the sentencing hearing, the government took the position that he did not meet requirement (5).  In the opinion of government counsel, defendant had not truthfully provided all information and evidence he had concerning the offenses that were part of the same course of conduct or of a common scheme or plan.  In conversations with the government, defendant had not admitted being involved with more than 6.84 grams of crack.  That is, he had not admitted the additional drug quantities that have been previously discussed in this opinion.  Accordingly, government counsel, who believed that defendant was not being truthful, stated to the Court that he was not eligible for "safety valve" treatment, and the Court agreed.

This argument is a replay, in different form, of the point discussed above in part II of this opinion.  Whether defendant truthfully denied involvement with more than 6.84 grams is a question of fact.  The government cannot by its mere ipse dixit establish that defendant has been untruthful.  The issue requires evidence, or, as the government contends in this case, an agreement or stipulation by the defendant.  As we have seen, there was no such evidence, nor was there such a stipulation.  On the

-8-

present record, therefore, it cannot be said that there was a sufficient basis for rejecting the defendant's "safety valve" contention. Whether that contention should be accepted or rejected depends on the facts, and no relevant facts are in this record.

## IV.

For the reasons we have given, the judgment must be reversed, and the cause remanded for further proceedings. The conviction, as established by defendant's plea of guilty, of course stands. The only question to be determined on remand is the proper sentence, which will depend on the amount of drugs attributable to the defendant. Either side will be free to introduce evidence on this issue, and the government will bear the burden of proving the drug quantity it contends for by a preponderance.

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.