# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2756

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Manuel Rodriquez-Sandoval, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted:  February 10, 2003

Filed:  March 12, 2003

_____

Before WOLLMAN, RICHARD SHEPPARD ARNOLD, and MELLOY, Circuit
Judges.

_____

PER CURIAM.

Manuel Rodriquez-Sandoval pled guilty to possession with intent to distribute
and conspiracy to possess with intent to distribute in excess of one kilogram of
cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846, and 18 U.S.C. § 2.
After determining that Rodriquez was not entitled to a safety valve reduction pursuant
to U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f), the district court[1] sentenced him to the

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District
of Minnesota.

statutory minimum sentence of sixty months. On appeal, Rodriquez contends that the district court clearly erred in finding that he had not truthfully provided to the government all information in his possession concerning the offenses. We affirm.

## I.

On February 28, 2002, Rodriquez appeared for a proffer session with the government. After discussing his background and admitting that he was an illegal alien, Rodriquez discussed his role in the drug offense. He claimed he had never previously sold drugs and that he did not know his supplier's true name, address, or phone number. Rodriquez claimed to have had a chance meeting in a Greely, Colorado, bar with a man he knew only as "Javier." Rodriquez did not know Javier's real name and could describe him only insofar as he was a Mexican in his thirties who had a lot of money, dressed "cowboy style," and drove nice vehicles including a black Tahoe, a burgundy Navigator, and a white Mustang. Rodriquez said he realized Javier was a drug dealer when, after mentioning his own money troubles, Javier told him "there was an easy way to get money."

Rodriquez stated that he had visited Minnesota on December 12, 2001, and returned to Colorado for Christmas. Rodriquez claimed that Javier offered him $5,000 to sell one kilogram of cocaine during his trip to Minnesota on January 2, 2002. Rodriquez said he did not give Javier any money for the cocaine and that Javier had not called him in Minnesota to inquire into his progress. Rodriquez claimed not to know anyone in Minnesota or Colorado who sold drugs besides Javier. He further stated that he traveled to Minnesota without any idea to whom he would sell the cocaine and arrived at 14th and East Lake Street, a notorious drug neighborhood, by coincidence. Rodriquez claimed that he tried to sell the cocaine in that neighborhood because it appeared to him that many Mexicans lived there.

II.

Each of the charges to which Rodriquez pled guilty carries a statutory minimum sentence of five years. 21 U.S.C. § 841(b)(1)(B). If the district court finds that the defendant meets the five criteria set out in 18 U.S.C. § 3553(f), however, the defendant must be sentenced according to the sentencing guidelines without regard to the statutory minimum. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. We review for clear error the district court's findings regarding the application of the safety valve provisions of § 3553(f). United States v. Tournier, 171 F.3d 645, 647 (8th Cir. 1999). A defendant seeking safety valve relief bears the burden to show that each condition of § 3553(f) has been satisfied. Wright v. United States, 113 F.3d 133, 134 (8th Cir. 1997).

There is no dispute that Rodriquez satisfied the first four elements of § 3553(f). The fifth element requires that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. 3553(f)(5); U.S.S.G. § 5C1.2. The district court found that Rodriquez had not provided the government with complete and truthful information at his proffer session or at any other time before the sentencing hearing.

Relying primarily on United States v. Kang, Rodriquez contends that the government may not simply argue that the information he provided is not credible, but rather it must provide evidence that he was not truthful. 143 F.3d 379, 383 (8th Cir. 1998) ("The government cannot by its mere ipse dixit establish that defendant has been untruthful. The issue requires evidence . . . ."). Kang pled guilty to possession of 6.84 grams of crack cocaine with intent to distribute. Id. at 380. At sentencing, the government argued that Kang had distributed between 50 and 150 grams. Id. at 381. Incorrectly believing that Kang had stipulated to that amount, the

-3-

government presented no evidence to that effect. Id. at 382. Without any evidence to contradict Kang's statement, we held that the district court erred in finding Kang untruthful, and thus we remanded for resentencing. Id. at 383.

Kang is inapposite for two reasons. First, the government did present evidence tending to show that Rodriquez was not completely truthful in stating that his arrival in the area of 14th and East Lake Street was by chance. Agent Tony Adams of the Drug Enforcement Administration testified at the sentencing hearing that an informant notified the Minneapolis Police Narcotics Unit about a quantity of cocaine coming to Minneapolis in a white pickup truck bearing out-of-state plates. The informant indicated that he would meet the person with the cocaine in the area of 14th and East Lake Street. On January 8, 2002, a police surveillance team identified Rodriquez in a white pickup truck. Rodriquez was arrested the next day when he returned to the neighborhood with the cocaine in his pickup truck. Agent Adams's testimony regarding the informant directly contradicts Rodriquez's statements that he was not familiar with Minneapolis and did not know to whom he would sell the cocaine.

Second, the information provided by Rodriquez is incredible on its face. No additional evidence is needed to support a finding that Rodriquez was not completely truthful. Rodriquez claimed that although he had never sold drugs before, he was given $25,000 worth of cocaine on credit by a man he met by chance in a Colorado bar. Although he referred to his supplier as Javier, Rodriquez claimed not to know his name or to have any contact information for him. Rodriquez further stated that Javier gave him general instructions to sell the cocaine in Minnesota but provided him with no contacts in the area. We agree with the district court that "there are things that the defendant has said that [do not] make sense." Rodriquez's failure truthfully to provide all information he possessed about the circumstances surrounding his drug offenses precludes application of safety valve relief in his case.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.