# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1804

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Juan Jose Bolanos, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 15, 2004
Filed: May 31, 2005

_____

Before WOLLMAN, LAY, and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Juan Jose Bolanos (Bolanos) pleaded guilty to conspiracy to distribute and possess with the intent to distribute in excess of 500 grams of a mixture or substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and § 846. The district court[1] sentenced him to 60 months' imprisonment and four years of supervised release, the mandatory minimum sentence compelled by 21 U.S.C. § 841(b)(1)(B). On appeal, Bolanos claims that the district court erred in denying him both safety-valve relief under 18 U.S.C. § 3553(f) (U.S.S.G. § 5C1.2), and a role

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

reduction under U.S.S.G. § 3B1.2 for playing either a minor or minimal role in the conspiracy. Bolanos also asserts several supplemental pro-se claims that do not affect the outcome of his appeal. We affirm.

**I.**

In May 2003, police officers learned of a cocaine distribution operation in Minneapolis involving Jose Perez-Alonzo (Perez-Alonzo). Undercover officer Luis Porras (Porras) met with Perez-Alonzo at a local bar to discuss the purchase of a kilogram of cocaine. Bolanos accompanied Perez-Alonzo, but did not participate actively in the conversation. After the meeting, Perez-Alonzo attempted over the telephone to persuade Porras to purchase a sample of cocaine. When Porras declined to buy the sample, Bolanos began speaking to him on the telephone in an attempt to persuade him to make a purchase.

During their second meeting, Perez-Alonzo instructed Porras to wait at a restaurant while he went to obtain the cocaine. Agents from the Drug Enforcement Administration Task Force surveilled the meeting and followed Perez-Alonzo as he returned to his home, obtained a bag, and then met with three other individuals who were in a separate vehicle driven by Bolanos. Both vehicles proceeded together towards the restaurant. Perez-Alonzo drove into the restaurant's parking lot, while Bolanos passed by it. Perez-Alonzo was arrested in the parking lot, where agents discovered an ounce of cocaine in his vehicle. Other agents continued to follow Bolanos's vehicle and performed a traffic stop in the vicinity of the restaurant. They searched the vehicle, finding approximately one kilogram of cocaine on the floor behind the driver's seat.

In Bolanos's first trial, the jury deadlocked during deliberations. The district court ordered a retrial, and Bolanos pleaded guilty to the offense listed above, which carries a statutory sentencing range of 5 years, the mandatory minimum, to 40 years. 21 U.S.C. § 841(b)(1)(B). At sentencing, Bolanos requested the application of the

safety valve provision of 18 U.S.C. § 3553(f) in order to remove himself from the reach of the 5-year mandatory minimum sentence. If applied, this provision would dictate that Bolanos be sentenced under the United States Sentencing Guidelines (as qualified by Booker v. United States, 125 S. Ct. 738 (2005)).

**II.**

We review for clear error a district court's findings as to the completeness and truthfulness of a defendant's safety-valve proffer. United States v. Rojas-Coria, 401 F.3d 871, 873 (8th Cir. 2005). The defendant has the burden of demonstrating that he or she has made the required statement. United States v. Santana, 150 F.3d 860, 864 (8th Cir. 1998). That statement must include "all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2.

After pleading guilty, Bolanos and his attorney met with Porras and the prosecutor for a safety-valve interview. The government summarized the content of this interview in its letter of February 27, 2004 (the February letter), which concluded that the district court should not apply the safety-valve provision. The government's ground for this recommendation was that Bolanos had "not provided all information and evidence concerning the offense as required." Gov. App. at A-9. It noted that in his change of plea hearing Bolanos "admitted that he discussed a cocaine deal with Officer Porras over the phone on May 12 and that discussion pertained to more than 2 ounces of cocaine" and that Bolanos "further admitted that he knew he was delivering cocaine on May 14th." Id. The February letter then summarized the facts of the case and the facts of Bolanos's proffer, these latter portions having been agreed to by Bolanos as accurate. The proffer summary mentions Bolanos's admission that he spoke with Porras about purchasing cocaine over the telephone at Perez-Alonzo's request, that he did not know a kilogram deal was being discussed, and that, with respect to the second meeting on May 14th when the arrests occurred, he did not

know that there was cocaine in his car until Perez-Alonzo told him of this fact via a cellular telephone conversation that took place as Bolanos drove to the restaurant where Porras awaited. Id. at A-11. Bolanos claims that this is why he did not follow Perez-Alonzo into the restaurant parking lot. He stated that he was an unwitting participant in the delivery and that two other people in his vehicle also lacked knowledge of the cocaine.

Bolanos's statements at the change of plea hearing and the safety-valve interview are not necessarily inconsistent. Bolanos admitted at all times that he discussed a drug transaction with Porras on the telephone after their first meeting. His admission at the change of plea hearing that he knew he was transporting cocaine on May 14th is not contradicted by his statement at the proffer session that for a portion of his drive on May 14th he did not know he was transporting cocaine in his vehicle. There is a potential contradiction between these two statements, however, and Bolanos did not seek to counter the inference that could be drawn to that effect. The February letter casts further doubt on the truthfulness of his statement during the proffer by recalling that "[a]rresting officers noted a strong odor of cocaine from Bolanos' vehicle." Id.

The district court noted that there were inconsistencies in Bolanos's proffer and the testimony heard at trial, referred to the government's position on the matter, and concluded that the application of the safety valve provision was unwarranted. Although our review would have been aided had the district court referenced the content of that testimony or the identity of the testifier, we cannot conclude that its finding was clearly erroneous. "Under the clear error standard, we need not agree with the district court's findings of disputed fact to affirm." United States v. Tournier, 171 F.3d 645, 648 (8th Cir. 1999). In light of the entire record, we recognize that it is plausible that Bolanos was untruthful or inconsistent in his statements, and thus our inquiry stops here. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals

may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985).

By affirming the district court's denial of the safety-valve provision, we have rendered moot Bolanos's claim under U.S.S.G. § 3B1.2 for role reduction. Bolanos concedes this point, for even if we were to reverse the district court's ruling that he did not qualify as a minor or minimal participant under the sentencing guidelines, his statutory mandatory minimum sentence would not be affected. See United States v. Guerrero-Cortez, 110 F.3d 647, 653 (8th Cir. 1997).

## III.

In his pro-se supplemental brief filed with our permission, Bolanos argues that (1) the district court erred by ordering a retrial following the jury deadlock, (2) the district court erred by accepting his guilty plea, and (3) his sentence violates Blakely v. Washington, 124 S. Ct. 2531, 2536 (2004). These claims have no merit. There is nothing in the record that would justify a variation from the rule: "[W]ithout exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." Arizona v. Washington, 434 U.S. 497, 509 (1978). With respect to Bolanos's second claim, we conclude that the district court adequately explained the nature of the charges against him, the range of penalties, and the rights being waived. We further note that Bolanos consulted with his attorney on these issues and that he did provide the district court with evidence sufficient to support its determination that Bolanos committed the offense. With regard to his third pro-se claim, we note that Bolanos's sentence was not based upon an application of the United States Sentencing Guidelines, but rather upon a

mandatory minimum sentence dictated by statute.  Therefore, there is no error under Blakely.  See United States v. Vieth, 397 F.3d 615, 620 (8th Cir. 2005).

The sentence is affirmed.

_____