# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4168

_____

United States of America,          *

           *

         Plaintiff - Appellee,     *

           *    Appeal from the United States

      v.               *    District Court for the

           *    Northern District of Iowa.

Gustavo Gomez-Perez, also known as   *

Mario,            *

           *

         Defendant - Appellant.    *

_____

Submitted: June 15, 2006
Filed: June 21, 2006

_____

Before BYE, LAY, and RILEY, Circuit Judges.

_____

BYE, Circuit Judge.

Gustavo Gomez-Perez pleaded guilty to one count of conspiracy to distribute 500 grams or more of an illegal methamphetamine mixture. The district court[1] sentenced Gomez-Perez to 135 months imprisonment, five years supervised release, and ordered he pay a $100 special assessment. On appeal, Gomez-Perez claims the district court erred by failing to grant him safety valve relief pursuant to United States

_____

[1]The Honorable Donald E. O'Brien, United States District Judge for the Northen District of Iowa.

Sentencing Guidelines (U.S.S.G.) § 5C1.2(a)(5) and by establishing the quantity of drugs through witness testimony without discussing whether the challenged evidence lacked indicia of reliability.  We affirm.

I

Gomez-Perez claims the district court erred by not providing him with safety valve relief pursuant to U.S.S.G. § 5C1.2(a)(5).  The district court held Gomez-Perez did not meet the fifth requirement of the safety valve because he failed to provide complete and truthful information to government interviewers regarding his involvement in the present offense.

We review de novo a district court's legal interpretation of the sentencing guidelines.  United States v. Mathijssen, 406 F.3d 496, 498 (8th Cir. 2005).  We review the district court's findings as to the completeness and truthfulness of a defendant's safety valve proffer for clear error.  United States v. Bolanos, 409 F.3d 1045, 1047 (8th Cir. 2005).

The district court held:

> I can't say that [the government is] wrong in saying that, "Judge, he just didn't debrief properly" and so forth.  And he has told them, before he ever got to court here, a couple of different statements and so forth.  And I think that's enough.  So he's not going to get a safety valve.
> . . .
> The defendant does not appear to qualify for the two level safety valve decrease because he did not truthfully provide all information to the government related in the offense.
>
> Now, I said there's an argument about that, but unless the Court can show that it's almost impossible for the government not to agree to safety valve, that it cannot be imposed.

And I think in this particular case they have plenty of evidence to show that he wasn't always telling the same thing. And that's about all they need to cancel a safety valve.

Sent. Tr. Nov. 8 at 57, 68.

Gomez-Perez argues the district court improperly deferred to the government regarding the truthfulness of the defendant's information. See United States v. Alvarado-Rivera, 412 F.3d 942, 947 (8th Cir. 2005) ("The statute creating the safety valve provides that it is the district court which is to determine at sentencing whether the requirements for the benefit have been met, including whether a defendant has furnished truthful information."). Specifically, he argues the court erred by stating: (1) "[U]nless the Court can show that it's almost impossible for the government not to agree to safety valve, that it cannot be imposed"; and (2) "I can't say that they're wrong in saying that, 'Judge, he just didn't debrief properly.'"

However, reading the entire court's statement demonstrates the court did not merely defer to the government. The defendant bears the burden of showing by a preponderance of the evidence he truthfully debriefed to qualify for safety valve, id. at 947, and the district court held the defendant failed to meet his burden: "And I think in this particular case they have plenty of evidence to show that he wasn't always telling the same thing."

Regardless of the standard to be applied, Gomez-Perez claims he met the fifth requirement by "pleading guilty, accepting responsibility, and having nothing to add to the information he provided initially, or which was through the Government interviewing or proffering other defendants who claimed they knew of Gomez-Perez's level of involvement with controlled substances." Appellant's Br. at 12-13. Gomez-Perez asserts "he wasn't always telling the same thing" is an insufficient basis on which to deny safety valve relief. However, this is incorrect. A district court finding a defendant told several different versions of a story is a sufficient basis to find the

-3-

defendant failed to truthfully and completely disclose. See, e.g., id. at 948 (upholding denial of safety valve relief in part because "[d]etails in the statements given by appellants changed as the investigation progressed and during the course of their proffers" and "[a]ppellants did not provide the district court any basis to believe that their latest stories were more reliable than their discredited or withdrawn claims"). This is not to say, however, a district court may not credit the last version of events as truthful and grant safety valve relief on such basis. See United States v. Morones, 181 F.3d 888, 891 (8th Cir. 1999) ("Although the defendant in this type of case may have told the government inconsistent stories, it serves the purposes of the safety valve to grant relief if the sentencing court is persuaded that the last story is complete and truthful."). The district court in the instant case, however, failed to credit the final version of Gomez-Perez's story.

Undaunted, Gomez-Perez asserts the case should be remanded because the district court improperly relied on the testimony of Martin Barragan-Torres, who was also convicted in a drug conspiracy. Gomez-Perez argues the district court should have made a further inquiry into whether Barragan-Torres's testimony had a sufficient indicia of reliability where the court merely stated: "I wasn't too impressed with Barragan. He said that he received a threat, and his parents say he wasn't threatened, seems to be contrary to what he was saying." Sent. Tr. Nov. 8 at 48.

However, even assuming such claim had merit, the district court's decision did not hinge on the testimony of Martin Barragan-Torres. The district court noted "he has told them, before he ever got to court here, a couple of different statements and so forth," and "in this particular case they have plenty of evidence to show that he wasn't always telling the same thing." Id. at 57, 68.

As the government points out, during Gomez-Perez's post-Miranda interview, he claimed he purchased pounds of methamphetamine and sold drugs to a confidential

informant fifteen times. During his proffer, however, Gomez-Perez stated he only purchased ounces of methamphetamine six or eight times and delivered methamphetamine a few times. At such proffer, he only admitted amounts of methamphetamine totaling less than 500 grams. His statements were inconsistent with other defendants who discussed his drug activity.

At sentencing, co-defendant Eric Johnson testified he personally witnessed Gomez-Perez sell him and co-conspirator Richard Clifford twelve ounces of methamphetamine on five occasions. Richard Clifford testified he purchased at least five pounds of methamphetamine from Gomez-Perez. Barragan-Torres testified he purchased fifteen pounds of methamphetamine from Gomez-Perez, including two pounds seized from Gomez-Perez's residence when he was arrested.

Gomez-Perez then testified at sentencing he only purchased nine or ten ounces of methamphetamine and never had anything to do with Johnson. He also denied selling any methamphetamine to Barragan-Torres and testified he had not sold drugs to a confidential informant fifteen times. He claimed he told the officers everything he knew, and explained the change in his story by stating both his English and interpreter were bad. On cross-examination, however, Gomez-Perez became confused and stated he could not remember the amount of drugs involved. He also stated he did not know the price of a pound of methamphetamine, despite an officer's testimony describing how Gomez-Perez supplied officers with the figure of $3,000 in his post-Miranda interview.

On the next day of the sentencing hearing, Gomez-Perez remembered receiving fourteen ounces of methamphetamine, as well as an additional four ounces of methamphetamine from Barragan-Torres (but asserts he returned the four ounces). This change allowed Gomez-Perez to maintain his guilty plea by establishing more than 500 grams of methamphetamine.

While Gomez-Perez asserts translation issues led to his evolving story, he acknowledged he understood English to the point of answering two questions during sentencing before the interpreter could translate. Sent. Tr. Nov. 7 at 57. Moreover, his story changed even with a court-certified translator and despite exhortations to think very carefully and to search his memory. See, e.g., id. at 55.

Therefore, because a "District Court's findings regarding the credibility of witnesses are virtually unreviewable on appeal," United States v. Santana, 150 F.3d 860, 864 (1998), it was not clear error for the court to deny safety valve relief by finding Gomez-Perez did not meet his burden of showing he provided complete and truthful disclosure to government interviewers regarding his involvement in the present offense.

II

Gomez-Perez next asserts the case should be remanded because the district court established the quantity of drugs through witness testimony without discussing whether the challenged evidence lacks indicia of reliability. He does not argue the district court improperly credited testimony; he only asserts the court failed to state whether the challenged evidence lacks indicia of reliability. See United States v. Reynolds, 49 F.3d 423, 426 (8th Cir. 1995) (remanding where district court failed to discuss whether hearsay evidence bore indicia of reliability).

We review the district court's determination of drug quantity for clear error. United States v. Gonzales-Rodriguez, 239 F.3d 948, 953 (8th Cir. 2001). The district court's finding of the credibility of witnesses is "virtually unreviewable on appeal." United States v. Jones, 160 F.3d 473, 480 (8th Cir. 1998).

Here, the district court stated, regarding the testimony of Barragan-Torres, "I have to ask one of the probation officers where we'd be if I took off and didn't believe anything that Barragan said and then what that would do, if anything, to the matter of quantity." Sent. Tr. Nov. 8 at 54. After a recess the court noted:

> And it is true that if we didn't take any quantity from Barragan, that it would reduce it from a 36 down. But I am not finding that Barragan didn't do something, didn't have some relationship to the situation, Barragan didn't – or what he said was a hundred percent lie.
>
> So I can't in good conscience, say I'm not added anything up that Barragan would have – or did say. So we're not going to change the quantity . . .

Id. at 59.

Gomez-Perez asserts the statement "I am not finding that . . . what he said was a hundred percent lie" is confusing and contradictory and thus a remand is warranted. The government replies the court, while acknowledging some level of uncertainty, chose to credit and accept the testimony of Barragan-Torres. We agree the district court expressly declined to not credit Barragan-Torres's testimony. The district court can determine drug quantity using "imprecise evidence, so long as the record reflects a basis for the court's decision." United States v. Roach, 164 F.3d 403, 413-14 (8th Cir. 1998). Here, the district court credited Barragan-Torres's testimony, and such credibility determination is "virtually unreviewable on appeal." Jones, 160 F.3d at 480. The district court did not clearly err.

## III

For the reasons stated above, Gomez-Perez's sentence is affirmed.

_____