# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2826

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff/Appellee, | * |
| | * |
| v. | * |
| | * |
| Sergio Jesus Guerra-Cabrera, | * |
| | * |
| Defendant/Appellant. | * |
| | * |

_____

No. 06-2827

_____

Appeals from the United States
District Court for the
District of Minnesota.

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff/Appellee, | * |
| | * |
| v. | * |
| | * |
| Nazario Espinoza-Cabrera, | * |
| | * |
| Defendant/Appellant. | * |

_____

Submitted: January 9, 2007
Filed: February 27, 2007

_____

Before MURPHY and SMITH, Circuit Judges, and READE, District Judge.[1]
_____

MURPHY, Circuit Judge.

Sergio Jesus Guerra-Cabrera and Nazario Espinoza-Cabrera[2] each pled guilty to one count of conspiring to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). The district court[3] imposed mandatory minimum sentences of 120 months imprisonment after determining that the defendants were not eligible for safety valve relief under 18 U.S.C. § 3553(f). They appeal their sentences, and we affirm.

Officers from the Minnesota Bureau of Criminal Apprehension (BCA) began investigating Sergio Jesus Guerra-Cabrera after receiving information from a confidential informant that he was selling cocaine in the Twin Cities area. The informant introduced an undercover officer to Guerra-Cabrera as a potential customer, and on August 3, 2005 the undercover officer purchased one ounce of cocaine from him. During the transaction Guerra-Cabrera indicated that he would be able to provide large amounts of cocaine on a weekly basis. Following the controlled buy a uniformed officer made a routine traffic stop of Guerra-Cabrera's vehicle, at which time Guerra-Cabrera produced identification with the name Alejandro Hernandez Martinez.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

[2]Appellant Espinoza-Cabrera stated in his briefing and at his sentencing hearing that his real name is Cabrera-Espinoza, but in this opinion we use the name appearing in his indictment and judgment.

[3]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

On August 9, 2005 the undercover officer spoke with Guerra-Cabrera by telephone and arranged to purchase two ounces of cocaine and two ounces of crack. Guerra-Cabrera told the officer that one of his "guys" would complete the transaction. When the officer went to the prearranged location, he was met by Nazario Espinoza-Cabrera who entered the undercover vehicle and informed him that the drugs were on the way. Immediately thereafter an unidentified man approached the vehicle and handed Espinoza-Cabrera a pair of khaki shorts which contained two ounces each of powder and crack cocaine. After Espinoza-Cabrera completed the transaction and walked away from the officer's vehicle, surveillance officers observed him meeting with both Guerra-Cabrera and the unidentified man.

The undercover officer staged one final controlled buy for August 22, 2005. The officer met both Guerra-Cabrera and Espinoza-Cabrera in his undercover vehicle in the parking lot of the same restaurant. Guerra-Cabrera indicated that he would not be able to provide the promised amount of one half kilogram of cocaine and two ounces of crack because his supplier was in Chicago, so the officer arranged to purchase four ounces of cocaine and two ounces of crack for $4200. Surveillance officers then observed both suspects exit the vehicle and walk into an apartment complex. They returned to the parking lot a short time later with the drugs, and they were placed under arrest. Keys to an apartment in the complex they had visited were found on Espinoza-Cabrera, and a search warrant was obtained for the apartment.

Later that same day officers executed the warrant and recovered drugs, more than $12,000 in cash, and numerous items of drug paraphernalia. The only furnishings in the apartment were a bed, chair, and weight bench, but officers also found photographs and documents belonging to both defendants, a rental agreement for the apartment in the names of Alejandro Martinez Hernandez and Juan Bartolo, and a .45 caliber handgun with a loaded magazine lying next to it. In a later interview

-3-

Espinoza-Cabrera revealed that Juan Bartolo was the name of his father and that he had used that name for false identification.

Appellants were indicted for conspiracy to distribute and possess with intent to distribute more than 150 grams of cocaine base and 450 grams of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), distribution of more than 50 grams of cocaine and 50 grams of cocaine base, possession with intent to distribute more than 100 grams of cocaine and 50 grams of cocaine base, and possession with intent to distribute more than 250 grams of cocaine and 50 grams of cocaine base, all in violation of § 841. Based on the amount of drugs involved in their offenses, appellants faced a mandatory minimum sentence of 120 months. See 21 U.S.C. § 841(b)(1)(A). They could receive a lesser sentence only if they established their eligibility for safety valve relief, see U.S.S.G. §§ 2D1.1(b)(9), 5C.1.2, which provides for guideline sentences below the mandatory minimum in certain defined circumstances.

In order to qualify for the safety valve, the government must have had the opportunity to makes its sentencing recommendation and the court must have found that the defendant has no more than one criminal history point, has not used violence or possessed a firearm in connection with the offense, has not committed an offense resulting in death or serious bodily injury, has not been an organizer, leader, manager, or supervisor of others or engaged in a continuing criminal enterprise, and has truthfully provided to the government all information and evidence that he has concerning his offense no later than the time of the sentencing hearing. See 18 U.S.C. § 3553(f).

Appellants participated in separate proffer interviews with the government, and these interviews were summarized by a BCA agent who had been present. Guerra-Cabrera admitted that he had received the handgun found at the stash house as partial

payment for a drug sale. He also admitted that he had lied in a previous interview when he told the officers that his supplier was a man known as "V." Both appellants identified their drug supplier only as a man called "El Pepino." While Guerra-Cabrera stated that El Pepino was the unidentified man who had delivered the khaki shorts to the undercover vehicle, Espinoza-Cabrera said the unidentified man was "El Rojo," a friend of El Pepino. Espinoza-Cabrera initially admitted that he started selling drugs several months prior to his arrest, but later in the interview stated that he had never sold drugs to anyone other than the undercover officer.

Both men admitted to having obtained their supply of drugs from the stash house in the apartment complex but claimed to have had only limited access to the apartment. When asked how they obtained access for the August 22 controlled buy, Guerra-Cabrera stated that El Pepino was in New York at the time but had left the keys to the apartment in a washing machine in the laundry room for them to retrieve. Espinoza-Cabrera stated that El Pepino was in town and had left the keys under a car. When questioned about the documents at the stash house, Espinoza-Cabrera stated that El Pepino allowed him to keep some personal effects there because he was planning an upcoming move. Guerra-Cabrera claimed that El Pepino kept documents and photographs belonging to him as security to ensure that he did not leave.

In its recommendation letter to the district court, the government took the position that neither appellant was eligible for the safety valve because both had failed to provide substantially truthful information concerning their involvement in the charged offenses. In support the government submitted the agent summaries of the interviews. It pointed to a number of inconsistencies in appellants' statements, including the identity of the third participant in the August 9 controlled buy and the location of the keys to the apartment. It argued that appellants presented an implausible account of their relationship to El Pepino and their access to the stash house in an attempt to minimize their involvement in drug trafficking and to distance

themselves from the drugs and gun found there.  If appellants had so little contact with El Pepino, he was unlikely to trust them with the keys to his stash house according to the  government, which submitted that appellants were actually using the apartment as their own stash house.  It also questioned appellants' failure to identify their drug supplier with any specificity.

The district court held a sentencing hearing at which Espinoza-Cabrera testified, but Guerra-Cabrera did not.  Espinoza-Cabrera swore that he had provided truthful information to the government.  He reiterated his claim that he did not regularly keep keys to the stash house and stated that he had visited the apartment only three or four times.  He did not provide any additional information about the identity of his drug supplier or a way to contact him.  He also called two witnesses.  One witness testified that he had rented the apartment to two Hispanic males but was able to identify only Guerra-Cabrera.  The other testified that Espinoza-Cabrera resided in a different neighborhood from the one where the stash house was located.  The government did not submit additional evidence, relying instead on evidence already in the record and on its letter to the court with the attached summaries of the proffer interviews.

The district court determined that appellants were not eligible for a sentence below the statutory minimum, stating that it "had the firm impression that [their] statements were not complete, not truthful, and don't satisfy the purposes of [the] safety valve."  The district court did not find Espinoza-Cabrera's testimony at the hearing to be credible.  It also found that both appellants' statements to the government "don't add up," citing as one example the fact that Espinoza-Cabrera equivocated when asked whether Juan Bartolo was his father's name.  Although the district court expressed concern about the gun found at the stash house which could preclude safety valve eligibility if the court found that it was possessed in connection with the offense, see 18 U.S.C. § 3553(f)(2), the court did not make any findings of

fact with respect to the weapon. The district court then sentenced each appellant to 120 months.

Appellants assert on appeal that the district court erred by not awarding them safety valve treatment even after they submitted to proffer interviews with the government. The government responds that appellants' statements in their proffer interviews were neither truthful nor complete, that appellants offered implausible accounts of their involvement with drugs, and that this court should defer to the district court's findings about the credibility of their accounts. We will overturn a district court's findings with respect to safety valve eligibility only if they are clearly erroneous. United States v. Romo, 81 F.3d 84, 86 (8th Cir. 1996). Affirmance is required so long as the record supports those findings, regardless of which party is favored. United States v. Tournier, 171 F.3d 645, 647 (8th Cir. 1999). Defendants bear the burden of establishing that they have met each of the five eligibility requirements, including that they have provided truthful information to the government. See United States v. Santana, 150 F.3d 860, 864 (8th Cir. 1998).

This appeal turns on whether appellants provided all information they possessed to the government, or more precisely, whether the district court's findings that appellants did not were clearly erroneous. Appellants contend that the district court erred by demanding an unreasonably high degree of disclosure and detail in the information provided to the government. Participation in a proffer interview is never a guarantee of safety valve relief, however. See United States v. Alvarado-Rivera, 412 F.3d 942, 947 (8th Cir. 2005) (en banc). To merit safety valve treatment a defendant must do more than disclose the basic facts of his crime. United States v. Alarcon-Garcia, 327 F.3d 719, 723 (8th Cir. 2003). He must disclose whatever information he has about his offense, and the district court can hold him accountable for revealing the identities and participation of others involved in the offense if it could reasonably be expected he would have such information. Id.

Here, the district court did not deny appellants safety valve treatment simply because they had no useful information to provide, but rather because it determined that appellants had failed to disclose truthfully and fully the information they possessed about their offenses, including identification of their drug supplier and the full nature of their connection to the stash house.[4] Moreover, the district court did not rely solely on its determination that appellants had not told all they knew about their transactions, but rather denied them eligibility because it found their accounts not truthful. We cannot say that these findings were in clear error.

The district court was entitled to draw reasonable inferences from the evidence, including discrepancies between the appellants' statements, see Soto, United States v. Soto, 448 F.3d 993, 996 (8th Cir. 2006), and changes in their accounts over time, see Alvarado-Rivera, 412 F.3d at 948. Guerra-Cabrera and Espinoza-Cabrera gave conflicting statements about the identity of the third man involved in the August 9 controlled buy, about how they obtained the key to the stash house on August 22, about the location of the elusive El Pepino at the time of the August 22 controlled buy, and about why the stash house contained personal documents belonging to both defendants. In addition, Espinoza-Cabrera gave inconsistent statements during his proffer interview about whether he had been involved in prior drug sales, and Guerra-Cabrera admitted to having lied to authorities about the identity of his supplier.

The district court was also entitled to infer untruthfulness from the implausibility of appellants' accounts. See Alvarado-Rivera, 412 F.3d at 948 (upholding court's findings on basis of, among other things, improbability that large quantities of drugs would be fronted to supposedly minor drug dealer). Both denied

---

[4]Appellants' contention that the district court conflated safety valve eligibility with the requirements for a substantial assistance departure is without merit. While truthful information is relevant for both, a substantial assistance departure also requires that positive results follow for the prosecution. See U.S.S.G. § 5K1.1.

having regular access to the stash house, despite the fact that Espinoza-Cabrera had a set of keys to the apartment at the time of his arrest, that the apartment contained personal documents belonging to both men, and that the names on the lease were false names associated with them. While simultaneously claiming little to no knowledge about the identity of their drug supplier, including his address, phone number, or real name, they maintained that he left them the keys to his stash house, which contained very valuable amounts of cash and drugs, in a common area of the apartment complex. It was not unreasonable for the district court to have inferred that appellants were obscuring the identity of their drug supplier and the true extent of their connection to the stash house. In addition, the district court heard testimony from Espinoza-Cabrera, and her finding that he was not credible is virtually unreviewable on appeal. See United States v. Gomez-Perez, 452 F.3d 739, 743 (8th Cir. 2006).

While acknowledging that a defendant bears the burden of establishing each criteria for safety valve eligibility in the first instance, Guerra-Cabrera goes on to argue that if the government finds the proffer inadequate, it then has the burden of coming forward with additional evidence to challenge the truthfulness or completeness of that proffer. This same argument was squarely rejected by the en banc court in United States v. Alvarado-Rivera, 412 F.3d 942, 947 (8th Cir. 2005) (en banc). The panel decision in that case had relied on United States v. Kang, 143 F.3d 379 (8th Cir. 1998), to conclude that the burden shifted to the government upon a challenge to the proffer's truthfulness, United States v. Alvarado-Rivera, 386 F.3d 861, 868 (8th Cir. 2004), but the en banc court distinguished Kang as inapposite. Alvarado-Rivera, 412 F.3d at 948. Guerra-Cabrera nevertheless cites to Kang for support of its burden-shifting theory without mentioning the en banc authority in

direct opposition to that theory.[5] The burden of establishing qualification for the safety valve remained on Guerra-Cabrera.

Because the record before the district court supports its findings that appellants had not been truthful or provided all information they had, the government was not required to introduce any additional evidence. See Alvarado-Rivera, 412 F.3d at 949. Guerra-Cabrera asserts that the district court was not entitled to find that his statements lacked credibility since the court never heard him testify. This argument is as unavailing here at it was in Alvarado-Rivera, where we upheld the district court's safety valve findings notwithstanding that they were based on a cold record, including summaries of the defendants' proffer statements. Id. at 948-49. If appellants were unhappy with the state of the record, it was their responsibility to introduce additional evidence in order to meet their burden. See Santana, 150 F.3d at 864.

Since the record supports the district court's findings that Guerra-Cabrera and Espinoza-Cabrera failed truthfully to provide all information they had about their offenses, we cannot say that the court abused its discretion in concluding they were ineligible for safety valve relief. Accordingly, we affirm the judgments of the district court.

_____

[5]There can be little doubt that counsel was aware of our en banc decision since parts of his brief in this case echo word for word the dissenting portion of the en banc opinion.