# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2218

_____

United States of America

*Plaintiff - Appellee*

v.

Rigoberto Cervantes

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 16, 2019
Filed: July 3, 2019

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Rigoberto Cervantes pled guilty to possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). He appeals,

arguing the district court[1] should have granted safety-valve relief to him under 18 U.S.C. § 3553(f) and United States Sentencing Commission, Guidelines Manual, § 5C1.2. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

In March 2017, Cervantes was arrested after Nebraska police officers, acting on a tip, approached him at a gas station, requested to search his vehicle, and discovered methamphetamine in the bed of the truck. Gabriella Valdez was present at the scene, as she had been traveling with Cervantes in a separate vehicle. During a post-arrest interview with narcotics investigators, including Officer Christopher Rock, Cervantes admitted he was transporting approximately five pounds of methamphetamine from Arizona to Omaha. He stated a man named "Foo" contacted him a week earlier about the transport. The investigators, aware of the name "Foo" from their investigation, had Cervantes identify him from a photograph. Cervantes explained that a man named "Cabezón" was to pay him upon delivery of the methamphetamine, which Cervantes had picked up from the wife of a man named Jose Marcus. Cervantes said he had been given the name and phone number of Valdez, that he picked her up before he left for Nebraska, and that she had accompanied him on his journey.

The next month, Cervantes and several co-defendants were indicted on multiple charges related to the drug trafficking conspiracy. In December 2017, Cervantes met with investigators again for a safety-valve interview. Several of his statements in the safety-valve interview differed from those in his post-arrest interview. For instance, he said he was first contacted by Jose, not Foo, about the transport, and he denied knowing Jose's last name. He initially denied knowing what was being transported in his truck, let alone that it was five pounds of methamphetamine as he had originally stated. When pressed, he admitted to knowing it was methamphetamine but continued

---

[1]The Honorable John M. Gerrard, Chief Judge, United States District Court for the District of Nebraska.

to deny knowledge of the amount. He described using Jose to communicate with Valdez, whose number he denied knowing.

Cervantes eventually entered into a plea agreement with the government and pled guilty to possessing with intent to distribute 500 grams or more of a mixture containing methamphetamine. His plea agreement provided the government would recommend a two-level offense reduction pursuant to USSG § 2D1.1(b)(17) and relief from any statutory minimum sentence pursuant to 18 U.S.C. § 3553(f) and USSG § 5C1.2 if he truthfully disclosed all information and evidence he had concerning the offense and if he otherwise qualified for the safety valve. The presentence investigation report (PSR) did not recommend a safety-valve reduction. When the government adopted the PSR's recommendations, Cervantes objected.

At sentencing, Cervantes and Officer Rock testified. Cervantes's story again shifted. Though he described going with Valdez to pick up the truck from Jose in his safety-valve interview, he testified that he went alone. He also altered the description of how he would be paid: in his safety-valve interview, he said he would be paid upon delivery, but in his testimony, he said he would be paid upon his return to Arizona. Cervantes claimed he had withheld certain information in his post-arrest interview but could not explain why he had done so. As he had in his safety-valve interview, Cervantes contradicted his post-arrest interview by denying knowing Jose's last name, Valdez's phone number, or how much methamphetamine was in the truck, and he again said it was Jose and not Foo who originally directed the transport.

Officer Rock testified that while it was common for defendants to lie during post-arrest interviews in the hopes of avoiding further criminal charges, defendants tend to provide more information in safety-valve interviews with an attorney present. However, Officer Rock stated he felt Cervantes "minimized" his role in the safety-valve interview, providing less information than he had in his post-arrest interview.

The district court credited Officer Rock's testimony. Because of the inconsistencies between Cervantes's interviews, it did not credit Cervantes's account and determined that he failed to provide truthful and complete information about his offense. It therefore overruled his objection to the government's adoption of the PSR recommendations and denied him safety-valve relief. He was sentenced to the statutory mandatory minimum term of 120 months imprisonment. He appeals, arguing he should have been provided safety-valve relief from the mandatory minimum sentence because he provided all the accurate information he possessed in his safety-valve interview.

Under the safety-valve provision in USSG § 5C1.2, a district court may impose a Guidelines sentence "without regard to a statutory minimum" in cases involving "first-time non-violent drug offenders who meet certain requirements." Deltoro-Aguilera v. United States, 625 F.3d 434, 437 (8th Cir. 2010). The only requirement at issue in this case is the final one, that the defendant "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense. . . ." 18 U.S.C. § 3553(f). "The fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." Id. The burden is on the defendant "to show affirmatively that [he has] satisfied" this requirement. United States v. Alvarado-Rivera, 412 F.3d 942, 947 (8th Cir. 2005) (en banc).

"We review for clear error a district court's findings as to the completeness and truthfulness of a defendant's safety-valve proffer." United States v. Bolanos, 409 F.3d 1045, 1047 (8th Cir. 2005). We note that the district court "is entitled to draw reasonable inferences from the evidence," and "[t]he legal test is simply whether the record supports its safety valve findings." Alvarado-Rivera, 412 F.3d at 948-49. "A district court finding a defendant told several different versions of a story is a sufficient basis to find the defendant failed to truthfully and completely disclose."

United States v. Gomez-Perez, 452 F.3d 739, 741 (8th Cir. 2006). Furthermore, the district court's "findings regarding the credibility of witnesses are virtually unreviewable on appeal." United States v. Santana, 150 F.3d 860, 864 (8th Cir. 1998) (internal quotation marks omitted).

While the district court did not rely heavily on some of the minor inconsistencies between the interviews, it did emphasize some of the more significant aspects of Cervantes's changing stories. For instance, the district court explicitly mentioned that Cervantes identified Cabezón, Foo, and Jose Marcus in his post-arrest interview but denied knowing Cabezón, Foo, or Jose's last name at the safety-valve interview. Cervantes's argument that the district court demanded names from him that he simply did not know is unpersuasive because it was Cervantes himself who originally gave those names in his post-arrest interview. Cervantes also contradicted himself about the methamphetamine in the car: in his post-arrest interview, he admitted his vehicle contained approximately five pounds of methamphetamine, but in his subsequent statements, he denied knowing the amount and only after further questioning did he admit he knew it was methamphetamine at all. Not only does the record support the district court's determination that Cervantes told different versions of his story, but the district court's decision to credit Officer Rock's testimony and disbelieve Cervantes's at the sentencing hearing is "virtually unreviewable." Santana, 150 F.3d at 864 (internal quotation marks omitted). Thus, the district court's determination that Cervantes had not been complete and truthful in his safety-valve interview was not clearly erroneous. We affirm the district court's imposition of the mandatory minimum sentence.

_____