# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1301
_____

United States of America

*Plaintiff - Appellee*

v.

Abimael Trujillo-Linares

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: November 19, 2021
Filed: December 28, 2021
[Published]
_____

Before BENTON, KELLY, and ERICKSON, Circuit Judges.
_____

PER CURIAM.

Abimael Trujillo-Linares pleaded guilty to conspiracy to distribute 50 grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 841 and 846. On appeal, Trujillo argues that the district court[1] erred in denying him safety valve relief

_____

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

-1-

pursuant to 18 U.S.C. § 3553(f) and United States Sentencing Guidelines § 5C1.2 (2018). Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

On two occasions in April 2019, Trujillo sold methamphetamine to a confidential informant (CI). The two transactions involved a total of 110 grams, or approximately four ounces, of a substance containing methamphetamine. The CI contacted Trujillo a third time in May 2019. Trujillo was out of town and asked his nephew to deliver an additional 55 grams, or about two ounces, of methamphetamine to the CI. In August 2019, Trujillo and his nephew were charged in a one-count indictment. Trujillo participated in a safety valve interview with Investigator Josh Berlie and then entered a plea of guilty without a plea agreement, which was accepted by the court. The presentence investigation report recommended that Trujillo's safety valve interview did not meet the criteria for safety valve relief pursuant to § 5C1.2(a)(5).

Trujillo objected. In support of his eligibility, he submitted an affidavit attesting that he had "provided truthful information, admitted to every element and given information on relevant conduct," including "the name of his source of methamphetamine as well as the source's physical description, approximate age, weight and height, known vehicle and town of residence," in addition to "the names of others who were in attendance with him during the first of three transactions with the confidential informant, [and] the location and date of the transfer of proceeds from the sale from [Trujillo] to the source."

In response, the government presented testimony from Berlie, who identified numerous inconsistencies in Trujillo's interview that caused him to doubt Trujillo's honesty. Berlie noted that Trujillo gave only a vague description of his sole source of supply, Roku, and initially claimed not to know what kind of vehicle Roku drove but later said that it was a red Honda Civic. Berlie also testified that Trujillo first claimed to have received only two ounces of methamphetamine from Roku on two occasions, which was less than the quantity of the controlled buys with the CI.

Trujillo then corrected himself, saying he actually received four ounces plus a little more from Roku the second time. But Berlie did not find Trujillo's correction credible because the methamphetamine sold to the CI came packaged in one-ounce quantities, making it unlikely that Trujillo could end up with a small amount left over. Based on his experience working on drug trafficking investigations, Berlie did not find credible Trujillo's claim that he was fronted two ounces of methamphetamine on his very first interaction with Roku and held on to it for a couple of months before selling it. And Trujillo told the CI at first that he didn't have any methamphetamine on hand, which Berlie noted would be inconsistent with Trujillo having held the fronted methamphetamine for a month or more before selling it to the CI. The defense countered that the safety valve interview took place more than a year after Trujillo's arrest and argued that any inconsistencies could be attributed to this delay and the stressful circumstances of being interviewed by law enforcement.

The district court weighed Berlie's testimony and Trujillo's affidavit and determined that Trujillo had not been truthful with the government in his safety valve interview. The district court ruled that Trujillo therefore was not eligible for safety valve relief and sentenced him to the statutory minimum of ten years of imprisonment. In imposing the sentence, the district court expressed that the sentence, "for a case like this and the number of sales[,] is too harsh" but concluded that it "ha[d] no choice" since Trujillo did not qualify for safety valve relief.

II.

Pursuant to 18 U.S.C. § 3553(f) and USSG § 5C1.2, a court may sentence a defendant without regard for a statutory minimum sentence when certain conditions are met. This is known as "safety valve" relief. Only one criterion for safety valve relief is contested in this case—the requirement that prior to sentencing, the defendant have "truthfully provided to the Government all information and evidence the defendant has concerning the offense." 18 U.S.C. § 3553(f)(5); USSG § 5C1.2(a)(5).

The defendant has the burden to show that he qualifies for safety valve relief. United States v. Cervantes, 929 F.3d 535, 538 (8th Cir. 2019). "We review for clear error a district court's findings as to the completeness and truthfulness of a defendant's safety-valve proffer." United States v. Bolanos, 409 F.3d 1045, 1047 (8th Cir. 2005). "Affirmance is required if the record supports the court's findings, regardless of which party is favored. The test is not whether we 'agree with the district court's findings of disputed fact,' but whether the record supports them." United States v. Alvarado-Rivera, 412 F.3d 942, 947 (8th Cir. 2005) (en banc) (cleaned up) (quoting United States v. Tournier, 171 F.3d 645, 648 (8th Cir. 1999)). "In making its assessment of the truthfulness of a safety valve proffer, the district court is entitled to draw reasonable inferences from the evidence." Id. at 948. "[T]he district court's decision to credit [the officer's] testimony and disbelieve [the defendant's] at the sentencing hearing is 'virtually unreviewable.'" Cervantes, 929 F.3d at 539 (quoting United States v. Santana, 150 F.3d 860, 864 (8th Cir. 1998)).

In making its ruling, the district court weighed the credibility of Berlie's testimony against Trujillo's affidavit to determine whether Trujillo met his burden to persuade the court that he was truthful in his safety valve interview. The district court noted key reasons it was not persuaded that Trujillo was truthful. In particular, the district court did not find it credible that Trujillo had such limited information about Roku, who was apparently his only source of supply. The court also found Trujillo's assertion that he was fronted two ounces of methamphetamine the first time that he sold drugs "to be unusual," and concluded that there were "just a number of items that do not add up to a credible safety valve interview." The record supports the district court's determination that Trujillo was not eligible for safety valve relief, and the judgment of the district court is affirmed.

_____